STATE ex rel. LACLEDE GAS COMPANY, Relator-Appellant,

v.

PUBLIC SERVICE COMMISSION of Missouri, Respondent.

No. KDC 30581.

Missouri Court of Appeals, Western District.

May 5, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 9, 1980.

Application to Transfer Denied July 15, 1980.

Richard L. Eckhart, Morris E. Stokes and Robert M. Lee, St. Louis, for relator-appellant.

Paul W. Phillips, William F. Schwer and L. Russell Mitten, II, Jefferson City, for respondent.

Before WASSERSTROM, C. J., Presiding, and SHANGLER, PRITCHARD, SWOFFORD, SOMERVILLE, CLARK and MANFORD, JJ.

MANFORD, Judge.

This is an appeal from a Circuit Court judgment affirming[1] an order of the Public Service Commission. The order established new rate schedules for the natural gas utility. The judgment is affirmed.

The instant proceedings commenced with the filing of new proposed rate schedules by Laclede Gas Co. (hereinafter referred to as Laclede) with the Public Service Commission (hereinafter referred to as the P.S.C.) on August 16, 1976. The proposed rate schedule was designed to increase Laclede's gross operating revenues by an annual amount of $13,570,000, exclusive of gross receipt taxes.

Pursuant to § 393.150(1), RSMo 1969, the P.S.C., under date of September 7, 1976, suspended for a period of 120 days the effective date of the proposed schedule. The suspension was to allow sufficient time to study the effects of the proposed schedule and to determine if they were reasonable, just and in the public interest.

On October 13, 1976, pursuant to § 393.-150(2), RSMo 1969, the P.S.C. further suspended the effective date of the proposed schedule for an additional six months. This order also established a schedule for the filing and service of the staff's (P.S.C. staff's) and intervenors' testimony and exhibits; scheduled public hearings at several locations within Laclede's service area; scheduled a prehearing conference for March 28, 1977 and directed hearings to cross-examine witnesses on April 18, 1977.

On February 3, 1977, the P.S.C. permitted intervention by the City of St. Louis, St. Louis County, General Motors Corporation,

---

1. The parties hereto agree and this court construes the judgment of the circuit court as affirming the P.S.C.'s order because of its "net effect".

the Monsanto Company, ACF Industries, Inc., Anheuser-Busch, Inc., McDonnell Douglas Corporation and Nooter Corporation, as industrial intervenors. In addition, Lela Vasal (a consumer advocate), the Utility Consumers Council of Missouri, Inc., and the Missouri affiliate of the Association of Community Organization for Reform Now were also permitted to intervene.

Public hearings were conducted on March 28, 1977 at Poplar Bluff, on March 29, 1977 at Farmington, on March 30, 1977 at Festus, on April 4, 1977 in the City of St. Louis, on April 5, 1977 at Clayton and on April 6, 1977 at St. Charles. On April 18, 1977, another hearing was held in Jefferson City, which continued for eight days, and upon the completion of this hearing, the record in these proceedings was closed, except for the filing of late-filed exhibits.

Following the hearings, a briefing schedule was established and dates were prescribed for submission of briefs by all the parties.

On an earlier date, (April 7, 1977) a pre-conference hearing had been held, at which time certain matters were stipulated to between the parties.

The test year was established as the twelve-month period ending September 30, 1976, based upon actual data adjusted for that time period. In their stipulation, the parties agreed that a year-end rate base be used. They also agreed that the figures shown in the exhibits were mathematically correct regarding dollar amounts. Three major issues, which included numerous sub-topics, were defined for consideration. These were:

I  RATE BASE ISSUE
 (a) Minor construction work in progress (CWIP)
 (b) Cash Working Capital—Minimum Bank Balances
 (c) Depreciation Reserve

II  NET OPERATING ITEMS—COST OF SERVICE
 (a) Unaccounted—for gas expense
 (b) Charitable contributions
 (c) Advertising charged to sales expense
 (d) Advertising charged to administrative and general expense (Labor negotiations advertising)
 (e) Dues and donations charged to administrative and general expense
 (f) Salaries charged to sales expense
 (g) Rate case expense
 (h) Wage expense—Missouri Natural Division
 (i) Deferred income taxes on certain general and administrative expense capitalized
 (j) Research and development—coal gasification project conducted by the American Gas Association and the Energy Research and Development Agency
 (k) Main (piping) replacement program
 (l) other issues raised by public counsel

III  COST OF CAPITAL AND RATE OF RETURN
 (a) Return on repriced equity
 (b) Return on original cost common equity
 (c) Capital structure
 (d) Fair value rate base

Upon issue of its initial order, followed by a petition for review, the P.S.C. failed to make findings of fact and to enter conclusions of law as required, and the Circuit Court reversed the order, directing such P.S.C. findings and conclusions be made. The following is a listing of only those findings relative to the issues to which this opinion is directed.

*NET OPERATING ITEMS—COST OF SERVICE*

The P.S.C. concluded Laclede's unaccounted-for gas expense on a ten-year average amounted to $674,000. *The P.S.C. also concluded that the sum of $252,000, representing charitable contributions, was not a proper item includable in the rate schedule. The P.S.C. concluded that of the total sum*

*expended for advertising, the sum of $219,-399.40 was properly included in the rate schedule as being informative advertising designed to promote safety, conservation and/or off-peak gas use. The remainder of this expense was held to be goodwill advertising.* Laclede had been involved in labor negotiations and had expended the sum of $9,465 in newspaper advertisements relative to the problems related to these negotiations. The P.S.C. concluded that such advertisements were goodwill advertisements and not includable in the rate schedule. The sum of $19,470, representing dues and donations to various organizations, was denied by the P.S.C. as part of the rate schedule. Laclede proposed to include the sum of $62,553 as salary expense for the display and sale of gas appliances. The P.S.C. denied this amount within the rate schedule. In preparation for the instant proceedings, Laclede had hired or retained the services of Foster & Associates, utility consultants, for the sum of $5,000, and the P.S.C. approved this amount as part of the rate schedule. Laclede has within its structure a Missouri Natural Division and its salary pension costs and FICA taxes increase in the sum of $79,500 were included within the rate schedule by the P.S.C. The P.S.C. denied the request to include the sum of $483,700 in deferred taxes. Determination of this issue was made upon the conclusion that no evidence was shown to indicate that Laclede would or might possibly suffer any cash flow problem relating to tax adjustments. Laclede, as a participant in a $30,-000,000 coal gasification project is required to pay, as its annual contributive share, the sum of $86,000, and the P.S.C. approved inclusion of this cost in the rate schedule. Gas utilities, Laclede stated, are required to replace piping within their systems and this process is referred to as the main replacement program. The P.S.C. staff had recommended that Laclede be required to budget an additional $125,000 for pipe replacement. The P.S.C concluded that such expense need not be required.

A petition for review was filed by Laclede and after being ordered to do so by the circuit court, the P.S.C. filed its conclusions and the above findings. The circuit court, following arguments on the issues, then entered its judgment. Both Laclede and the P.S.C. filed notices of appeal. During the pendency of the proceedings before this court, the P.S.C. filed a motion to dismiss the appeal upon the premise of mootness. This motion was ordered taken with the case on appeal. The P.S.C. voluntarily dismissed its appeal, leaving the parties as Laclede as appellant and the P.S.C. as respondent, rather than as cross-appellant as first recorded. The case was scheduled to the "en banc" docket of this court, and both parties presented oral argument.

■ This court must first turn its attention to the pending motion to dismiss for mootness by respondent P.S.C. While, as will be later explained, no immediate or direct relief to either party can ensue from this opinion, some of the issues involved present matters of general public interest and persuade this court to dispose of those issues. The P.S.C. correctly argues that due to the extensive time lag occurring as a result of the extended proceedings before the P.S.C., the circuit court and the time before this court, Laclede has, in fact, applied for and has received authorization for additional rate schedules. Nevertheless, as previously stated, the instant case presents some issues of general public interest which create an overriding influence and which cause this court to overrule respondent's motion to dismiss in part.

While arguments were presented to this court upon the issue of fair value rate base and fair rate of return, along with claimed constitutional violations, this court, for the reasons set forth below address only two of the arguments presented. These arguments are (1) there was no substantial and competent evidence to support the P.S.C.'s disallowance of $204,691, this amount representing advertising charged to sales expense, because such action unlawfully deprives appellant of its constitutional right to free speech, deprives appellant of its right to meet competition, and permits the unlawful substitution of the P.S.C.'s judgment for that of appellant company and (2)

there was no substantial and competent evidence to support the P.S.C.'s disallowance of the sum of $252,000, this amount representing charitable contributions, because such action permits the unlawful substitution of the P.S.C.'s judgment for that of Laclede's management.

The scope of review by this court is equivalent to that of the circuit court. Review is made of the findings and order of the P.S.C. and not the circuit court, see *Ingram v. Civil Service Commission*, 584 S.W.2d 633 (Mo.App. 1979).

Following the review of almost 2,100 pages of transcript of the P.S.C.'s record, almost 300 pages of trial transcript, lengthy briefs by both parties and some 95 exhibits, this court concludes there are only two issues to be addressed. These are (1) was the denial of certain advertising costs as part of the rate structure lawful and reasonable? and (2) was the denial of charitable contributions as part of the rate structure lawful and reasonable?

These two issues are taken up and ruled upon because they present matters of general public interest and may be presented in other unrelated proceedings.

The arguments related to fair value rate base and rate of return, along with confiscatory rate making, present no viable legal issues and in conjunction with the prohibition against retroactive rate making, are found to be moot.

■ Review of this cause lies within the jurisdiction of this court pursuant to Mo. Const. Art. V, Section 18 (amended August 3, 1976). The role of this court is to determine the lawfulness and reasonableness of the P.S.C.'s order. In determining the lawfulness of such order, the court need not defer to the Public Service Commission.

Regarding the reasonableness of such order, however, this court cannot substitute its judgment for that of the P.S.C. if such order is supported by competent and substantial evidence, see *State ex rel. Utility Consumers Council of Missouri, Inc. v. P.S.C.*, 585 S.W.2d 41, 47 (Mo.banc 1979), citing *State ex rel. Dyer v. Public Service*

*Commission*, 341 S.W.2d 795 (Mo. 1960), cert. denied 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384 (1961). See also *State ex rel. St. Louis-San Francisco Ry. Co. v. Public Service Commission*, 439 S.W.2d 556, 559 (Mo.App. 1969) for the rule that commission order enjoys presumption of validity, and the burden to prove invalidity is upon the party attacking such order.

The P.S.C. derives its authority exclusively from the legislature. The first P.S.C. law was enacted in 1913 under SB 1, Mo. Laws sec. 1–140 (1913) and from its inception, the courts have recognized the purpose of such enactment to be the protection for the consuming public against the public utilities as natural monopolies. This protection, however, has been and continues to be balanced against permitted recovery by utilities of a just and reasonable return upon their investment of properties committed to service for the public, see *May Dep't Stores Co. v. Union Electric Light & Power Co.*, 341 Mo. 299, 107 S.W.2d 41, 48 (1937); *State ex rel. City of Sedalia v. Public Service Comm'n*, 275 Mo. 201, 204 S.W. 497 (1918), appeal dismissed 251 U.S. 547, 40 S.Ct. 342, 64 L.Ed. 408 (1920).

As regards the two issues addressed herein, Laclede argues that advertising costs should be charged to operational expenses and hence be a factor built into the rate schedule. Laclede also argues that to deny this expense would deny the utility from meeting competition, would violate its right to free speech and would constitute substitution of the judgment of the P.S.C. for that of company management. Laclede concludes that the record as a whole herein does not contain substantial and competent evidence to support the P.S.C.'s denial of the inclusion of such expense.

The P.S.C. refutes Laclede's contention on the premise that the user or ratepayer should not be required to pay for "goodwill" advertising by Laclede. During the test year (1976), Laclede expended a total sum of $424,090 for advertisement expense. The order entered in the instant case permitted the sum of $219,399 to be included in the rate schedule. The P.S.C. declared the

sum of $204,691 to represent goodwill advertising and disallowed said sum.

Research reveals a scarcity of authority upon the precise point. It should be pointed out that much attention was given this proposal by the P.S.C. and the sum permitted ($219,399) was attributable to advertising for informative purposes related to conservation, off-peak usage and safety. The amount granted was 51.7% of the total advertising expenditure.

The authority provided by both parties to this appeal really fails to dispose of the issue entirely. Laclede offers up a managerial and constitutional argument, and this contrasts with the statutory and discretional argument offered by the P.S.C.

Laclede cites *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), cert. denied 438 U.S. 907, 98 S.Ct. 3126, 57 L.Ed.2d 150 (1978), which involved a state statute prohibiting banks and other corporations from influencing referendum proposals which did not affect the property, assets or business of the particular corporation. The statute in question imposed criminal sanctions. The court held the statute invalid as its breadth caused an absolute prohibition of corporate communications. This case is obviously distinguishable and not controlling herein. As to other authority offered up by Laclede, such is equally not controlling or persuasive. Thus, *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), dealt with a state statute involving criminal sanctions to be imposed upon pharmacies for advertising prices for drugs. While the court in Virginia held the statute to be unconstitutional as an absolute prohibition upon free speech, the court was careful to emphasize that the real issue was the authority of the state to suppress the dissemination of truthful information. In addition, Laclede refers the court to *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), which dealt with newspaper advertising for an abortion clinic. In this case, the court held that a statute may not, by its overbreadth, violate the first amendment. *Schneider v. New Jersey*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939) was a case where a city ordinance was declared unconstitutional because it prohibited the distribution of pamphlets and the canvassing of residents for a religious cause, even though this religious cause was found to be fraudulent.

Laclede further directs this court's attention to *New England Telephone and Telegraph Company v. Massachusetts Department of Public Utilities*, 360 Mass. 443, 275 N.E.2d 493 (1971). In this case, the Supreme Court of Massachusetts held that since the advertising costs involved were so negligible as they related to the overall revenues of the utility and that the Department of Public Utilities did not find such costs to be unreasonable, that the utility as a service provider was entitled to promote and enlarge it business through advertisement. It should be noted in the *New England Telephone and Telegraph* case that the court appeared to emphasize the "service" agreement of the utility. This, the court feels, must be contrasted with, as in the instant case, a utility which provides an energy source which has an ultimate depletion status. Further, Laclede cites *Alabama Power Company v. Alabama Public Service Commission*, 359 So.2d 776 (Ala. 1978) wherein Alabama's highest court permitted as operational cost advertisement of honest and efficient management of the power company. *State of Oklahoma v. Oklahoma Gas and Electric Company*, 536 P.2d 887 (Okl.1975) was a decision holding invalid the prohibition against institutional advertising. This latter decision, however, also pointed out the necessity of the utility to establish a benefit to all ratepayers from advertising, and upon failure to do so, the regulatory commission could disallow such costs. *State ex rel. Kansas City v. Public Service Commission*, 301 Mo. 179, 257 S.W. 462 (1923) was a Supreme Court case involving a common carrier. The court held that the Public Service Commission holds no property interest in utilities. In *State ex rel. City of St. Joseph v. Public Service Commission*, 325 Mo. 209, 30 S.W.2d 8 (banc 1930), a case involving a water company,

the State Supreme Court declared that the company management could not be interfered with as long as the result thereof did not affect the public's rights. *State ex rel. Harline v. Public Service Commission*, 343 S.W.2d 177 (Mo.App.1960) was a case involving a power utility. This case declared that the regulatory power of the P.S.C. does not embrace the general management of the utility incident to ownership. The last case Laclede cites on this issue is *State ex rel. Southwestern Bell Telephone Co. v. Missouri Public Service Commission*, 262 U.S. 276, 43 S.Ct. 544, 67 L.Ed. 981 (1923), which stands for the proposition that the regulatory power of the P.S.C. does not clothe the P.S.C. with general powers of company management incidental to ownership.

While it is correct that utilities operate within our free enterprise system, the courts remain mindful that these same utilities are, in fact, by their nature monopolies. The history of regulation of such monopolies has been one of a continued balance between preserving the existence and integrity of the utility so it might continue service to the users, and protection to the users and ultimate ratepayers against unwarranted costs for utility services.

From the authorities considered upon this point, certain principles emerge, which permit disposition of this issue. It is obvious that the P.S.C. has no authority to take over the general management of any utility. It is just as obvious that a utility is a person under our laws entitled to all the constitutional safeguards as to free speech provided for under the first amendment to the United States Constitution and made applicable to the states by the 14th amendment.

These principles, however, esteemed and remaining as basic matters of right, must also, at each instance, be placed in prospective to the matters at hand.

Laclede is in the business of supplying a product necessary to modern living and admittedly deals in a product which has a limited source because it is a fossil fuel. As the limitation of source continues, prices react in relation to that progressive limitation.

The P.S.C. gave specific attention to the nature and extent of the advertising in question. The evidence is competent and substantial to support the finding of the P.S.C. that costs of advertising related to safety, off-peak usage and conservation are proper cost items to be included within the rate schedule.

The evidence herein does not support Laclede's argument that the P.S.C. undertook the management of the company or that such action by the P.S.C. violated any constitutional right of Laclede to the exercise of its right of free speech.

The order of the P.S.C. does not prohibit advertising by Laclede. If it had, this order would, without question, have violated the constitutional and managerial rights of Laclede. What the order prescribes is that advertising cost items directly related to the benefit of ratepayers are justified operational costs permitted to be included within the rate schedule. All other such expenses, while they too are decisions of management, are not operational costs includable in the rate schedule.

This court is persuaded that § 393.140(5) and § 393.270(4), RSMo 1978 authorize the P.S.C. to examine the methods, practices, regulation and property employed by public utilities, and that such authorization extends to examination of advertising cost. This court finds of particular persuasion the case of *State of Oklahoma v. Oklahoma Gas and Electric Company, supra*, 536 P.2d at 894, in that it adopts the principle therein when it states:

"We conclude the Commission may disallow any institutional advertising expenditures from operating expenses for ratemaking purposes unless the utility establishes such expenditures benefit all ratepayers."

By the adoption of such a rule, the managerial prerogatives of Laclede are maintained, and the right of Laclede to continue to exercise its right of free speech is preserved, while at the same time the P.S.C.

can perform its regulatory role of balancing the integrity of regulated utilities against the protection of the ratepayer.

■ This court concludes that pursuant to the statutory authority cited herein, denial of certain advertising costs was lawful and further, there was substantial and competent evidence that the finding of the P.S.C. was reasonable.

Turning to the question of charitable contributions, Laclede argues that the sum of $251,574.26, which represents charitable contributions, should be permitted as part of the company's total operating expenses and hence included within the rate schedule. The P.S.C. denied the requests, claiming inclusion of such expenditure would violate the long-standing policy against including such sums, a policy which dates back to 1918 when in *In Re Kansas City Light & Power Co.*, 8 Mo.P.S.C. 223, such request was denied.

■ Laclede argues that the P.S.C. cannot lawfully disallow such sum absent a showing by competent and substantial evidence of bad faith or abuse of discretion by the company's management. Laclede further argues that to deny such sum is to unlawfully substitute the P.S.C.'s judgment in lieu of the company management's judgment.

The P.S.C. is granted authority under § 393.150, RSMo 1978 to fix utility rates upon a showing that the increased rate is just and reasonable. The realm of this authority has been defined as including " . . . the power to determine what items should be included in a utility's operating expense and what items should be excluded . . . in order that the commission may arrive at a reasoned determination of the issue of 'just and reasonable' rates." *State ex rel. Hotel Continental v. Burton*, 334 S.W.2d 75, 80 (Mo.1960).

From the foregoing, it cannot follow that there must be a showing of bad faith or an abuse of company discretion in denying certain operational cost requests. The reasoning formulated by the P.S.C. in its denial of this sum falls within the discretion of the P.S.C. to render the decision to deny the request. The reasoning is summarized as follows: (1) Donations are adequately encouraged through income tax deductions. (2) Contributions are discretionary, thus not normal business expenditures. (3) Benefits from such expenditures accrue primarily to the stockholders, therefore, the stockholders should bear the burden of such expense. (4) The amount of contributions would have an effect on decisions in rate cases and should, for that reason, not be included. (5) Allowance of the contributions would require the ratepayers to make involuntary contributions to the various charities.

The action taken by the P.S.C. does not override the management of the company. The company may still exercise its judgment as to the giving or not giving of support to any one or several charitable causes. On the record, it is shown that the P.S.C. did not make an arbitrary decision, but in fact accorded Laclede full opportunity to make the request for inclusion of this sum.

Pursuant to § 393.150, RSMo 1978, and the evidence upon this record, it is concluded that the action of the P.S.C. was lawful, and there is competent and substantial evidence to uphold the ruling of the P.S.C. as reasonable on its denial of charitable contributions as a sum includable in the rate schedule.

As has been pointed out, this court is not authorized to afford immediate relief to either party, and can only affirm the action taken by the P.S.C. or remand for further proceedings by the P.S.C., see *Union Electric Company v. Clark*, 511 S.W.2d 822 (Mo. 1974); *State ex rel. Fee Fee Trunk Sewer, Inc. v. Public Service Commission*, 522 S.W.2d 67 (Mo.App.1975); *State ex rel. Detroit-Chicago Motor Bus Co. Inc. v. Public Service Commission*, 324 Mo. 270, 23 S.W.2d 115 (1929); *State ex rel. Egan v. Public Service Commission*, 319 S.W.2d 917 (Mo. App.1959); *State ex rel. Middlewest Freightways, Inc. v. Public Service Commission*, 261 S.W.2d 252 (Mo.App.1953); *State ex rel. Byers Transportation Co., Inc. v. Public Service Commission*, 246 S.W.2d 825

(Mo.App.1952); *State ex rel. Kansas City Transit, Inc. v. Public Service Commission,* 406 S.W.2d 5 (Mo. banc 1966); *State ex rel. Chicago, Rock Island and Pacific Railroad Company v. Public Service Commission,* 312 S.W.2d 791 (Mo. banc 1958); *State ex rel. Dyer v. Public Service Commission, supra; State ex rel. Pitcairn v. Public Service Commission,* 232 Mo.App. 609, 110 S.W.2d 367 (1937); *State ex rel. Dail v. Public Service Commission,* 240 Mo.App. 250, 203 S.W.2d 491 (1947); *Peoples Telephone Exchange v. Public Service Commission,* 239 Mo.App. 166, 186 S.W.2d 531 (1945) and *State ex rel. Utility Consumers Council of Missouri, Inc.*

*v. Public Service Commission, supra,* because to do otherwise would be retroactive rate making prohibited by the authority cited herein.

The judgment of the circuit court is, for the reasons set forth herein, affirmed.

All concur.