706 P.2d 511

**EL PASO ELECTRIC COMPANY, New Mexico Electric Service Company, Public Service Company of New Mexico, Southwestern Public Service Company and Texas-New Mexico Power Company, Petitioners-Appellants,**

v.

**NEW MEXICO PUBLIC SERVICE COMMISSION,**
Respondent-Appellee,

and

**New Mexico Attorney General, Intervenor-Appellee.**

No. 15645.

Supreme Court of New Mexico.

Sept. 25, 1985.

Keleher & McLeod, P.A., Richard B. Cole, Robert H. Clark, Albuquerque, William Royer, El Paso, Tex., Sutin, Thayer & Browne, Donald M. Salazar, Santa Fe, Hinkle, Cox, Eaton, Coffield & Hensley, Paul J. Kelly, Jr., Santa Fe, for petitioners-appellants.

John F. Meehan, Geoffrey Sloan, Tiane L. Sommer, Joanne Reuter, Asst. Attys. Gen., Santa Fe, for Public Service Com'n.

Paul Bardacke, Atty. Gen., Theodore W. Barudin, Asst. Atty. Gen., Santa Fe, for Atty. Gen.

## OPINION

FEDERICI, Chief Justice.

El Paso Electric Company and other utility companies (appellants) challenge the validity of the New Mexico Public Service Commission's (PSC's) General Order No. 31 (G.O. 31), which deals with the treatment, for rate-setting purposes, of utility companies' charitable contributions and expenditures for lobbying and advertising. On an earlier appeal this Court ruled on certain procedural aspects of the case and remanded the cause to the district court to address the merits. *Community Public Service Co. v. New Mexico Public Service Commission*, 99 N.M. 493, 660 P.2d 583 (1983). The district court upheld the validity of G.O. 31, and appellants again appeal. We affirm.

**Charitable Contributions and Lobbying Expenditures.**

■ Section IV.B of G.O. 31 essentially prohibits utility companies from including the expense of charitable contributions in their "cost of service" and thereby passing that expense on to the ratepayers. A utility company may include certain contributions in its cost of service if it affirmatively demonstrates that such expenses are "reasonable," and "result in a direct benefit to the ratepayer," but G.O. 31 specifically

states that maintenance of good will and good corporate citizenship are insufficient reasons for the inclusion of charitable contributions in cost of service. Section IV.C of G.O. 31 prohibits utilities from including their lobbying expenditures in their cost of service.

■ We agree with PSC that these prohibitions are reasonable, not arbitrary, and are lawful. Courts in a number of states have disallowed the inclusion of charitable contributions in utilities' operating expenses for rate-setting purposes. *E.g., Pacific Telephone & Telegraph Co. v. Public Utilities Commission*, 62 Cal.2d 634, 44 Cal.Rptr. 1, 401 P.2d 353 (1965); *Southern New England Telephone Co. v. Public Utilities Commission*, 29 Conn.Supp. 253, 282 A.2d 915 (Conn.Super.Ct.1970); *State v. Oklahoma Gas & Electric Co.*, 536 P.2d 887 (Okla.1975). We find persuasive their reasoning that charitable contributions, if included in utility companies' operating expenses, would constitute an "involuntary levy" on the ratepayers, who have no voice in where such contributions go and "who, because of the monopolistic nature of utility service, are unable to obtain service from another source and thereby avoid such a levy." *Pacific Telephone and Telegraph Co.*, 62 Cal.2d at 668, 44 Cal. Rptr. at 22, 401 P.2d at 374. In prohibiting the inclusion of charitable contributions in a company's cost of service, PSC acted within its statutory authority under the Public Utility Act to regulate public utilities "to the end that reasonable and proper services shall be available at fair, just and reasonable rates." NMSA 1978, § 62–3–1(B) (Repl.Pamp.1984).

Similar reasoning applies with even more force to lobbying expenditures, and the majority of states exclude those expenditures from utility companies' operating expenses. Again, a utility's ratepayers have no control over the nature or the goals of the utility's lobbying. *E.g., Illinois Bell Telephone Co. v. Illinois Commerce Commission*, 55 Ill.2d 461, 303 N.E.2d 364 (1973). Lobbying by utility companies seeks to enhance company profitability and therefore

primarily benefits the companies' shareholders. It is the shareholders, rather than the ratepayers, who properly should bear the cost. *See, e.g., In re Mountain States Telephone & Telegraph Co.*, 25 Pub.Util. Rep. 4th (PUR) 547 (N.M. State Corporation Commission 1978); *In re Mountain States Telephone & Telegraph Co.*, 39 Pub. Util.Rep. 4th (PUR) 222 (Colo. Public Utilities Commission 1980).

**Advertising Expenditures.**

Advertising expenses are divided by G.O. 31 into two categories: "allowable expenditures," which may be included in a utility's cost of service and thus passed on to the ratepayers, and "unallowable expenditures," which are excluded from the cost of service. Allowable advertising is that which is reasonable in amount and which:

(a) Advises the ratepayers of matters of public safety, health or emergency situations;

(b) Advocates to ratepayer through factual data and advice their conservation of energy resources and reduction of peak demand;

(c) Explains utility billing practices, services, and rates to ratepayers;

(d) Must be filed with governmental agencies or financial institutions (including annual reports, and stock prospectuses), other than advertisements filed pursuant to (f) below;

(e) Advises customers of employment opportunities with the utility company;

(f) Provides information required to be made available to customers or stockholders under State or Federal law and regulation; or

(g) Otherwise results in a measurable reduction of operating costs and more efficient utility service to ratepayers, except as excluded by * * * [that part of G.O. 31 setting forth unallowable expenditures].

G.O. 31, § IV.A.2.

Unallowable advertising expenditures, under G.O. 31, are those which "in whole or in any part":

(a) Promote increases in the usage of energy or utility services;

(b) Except as required by State or Federal law or regulations, promote the sale of any goods or services from any specific company, including, but not limited to, the utility company or any subsidiary or affiliated company;

(c) Seek to establish a favorable public image of the company, other than by identifying it as the source of an allowable advertising expenditure * * *;

(d) Advocate a position rather than providing factual information in any [allowable] advertisement . . .; or

(e) Justify a request for higher rates, or the need for plant expansion, or for any particular addition to plant or service costs.

G.O. 31, § IV.A.3.

G.O. 31 also requires that utilities keep a record of their advertising, including each advertisement's text and cost, and it requires that a utility show by "clear and convincing" evidence that an advertising expense is allowable for it to be included in the cost of service.

■ Appellants contend, first, that this restriction on advertising constitutes an unreasonable interference with their management discretion, and unconstitutionally abridges their right of freedom of speech. We agree with PSC, however, that the restriction is not an unreasonable interference with management discretion, but rather a reasonable exercise of PSC's authority to insure that utility services are available "at fair, just and reasonable rates." NMSA 1978, § 62–3–1(B). Section IV.A.2 of G.O. 31 encompasses so-called "informational" advertising—advertising which informs the ratepayers of matters such as safety, billing practices, or energy conservation. This type of advertising directly benefits the ratepayers, so it is reasonable and proper that the cost of this advertising be included in a utility company's operating expenses for ratesetting purposes, as G.O. 31 provides. *See, e.g., City of Cleveland v. Public Utilities Commission*, 63 Ohio St.2d 62, 406 N.E.2d 1370 (1980). *See also* Annot., 83 A.L.R.3d 963

(1978). G.O. 31 Section IV.A.3, on the other hand, encompasses promotional and political advertising, as well as so-called "institutional" advertising which is intended to enhance a company's corporate image. Any benefit to the ratepayers of these types of advertising is very attenuated. *City of Cleveland v. Public Utilities Commission;* Note, *Public Utilities: The Allowance of Advertising Expenditures for Rate-Making Purposes—Is This Trip Really Necessary?,* 29 Okla.L.Rev. 202 (1976). It is reasonable, therefore, that the costs of such advertising be charged not to the ratepayers but to the shareholders, who do benefit. *Id.; In re Hawaiian Electric Co.,* 56 Haw. 260, 535 P.2d 1102 (1975); *State v. Oklahoma Gas and Electric Co.* G.O. 31 does not prohibit a utility company's management from using these latter types of advertising; it only prohibits the management from passing the cost on to the ratepayers.

By the same token, G.O. 31 does not unconstitutionally abridge appellants' freedom of speech. U.S. Const. amends. I, XIV; N.M. Const. art. II, § 17. As commercial speech, advertising is entitled to some degree of constitutional protection, and an outright ban on the types of advertising listed in G.O. 31 Section IV.A.3 clearly would be unconstitutional. *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). G.O. 31, however, does not ban any speech; it only reasonably requires that the cost of certain advertising not be passed on to a utility's "captive" customers, the ratepayers. *Central Hudson Gas & Electric Corp.* therefore is inapplicable, and G.O. 31 is constitutional. *State ex rel. LaClede Gas Co. v. Public Service Commission,* 600 S.W.2d 222 (Mo.Ct.App.1980); *In re Concord Natural Gas Corp.,* 121 N.H. 685, 433 A.2d 1291 (1981); *Rochester Gas & Electric Corp. v. Public Service Commission,* 51 N.Y.2d 823, 413 N.E.2d 359, 433 N.Y.S.2d 420 (1980).

Appellants also contend that G.O. 31 employs such ambiguous terminology in categorizing advertising expenses as allowable or unallowable as to render the Order arbitrary and unreasonable. We disagree. It is not necessary that a regulation be drafted with absolute precision, only that it can be construed using known, accepted rules of construction. *Bliss v. Dority,* 55 N.M. 12, 225 P.2d 1007 (1950); *New Mexico Municipal League, Inc. v. New Mexico Environmental Improvement Board,* 88 N.M. 201, 539 P.2d 221 (Ct.App.1975). We conclude that the terminology of G.O. 31, set out above, meets this test.

Appellants also raise the somewhat related argument, however, that the "clear and convincing" standard of proof that a utility company must meet under G.O. 31, for an advertising expense to be included in the cost of service, is arbitrary and unreasonable. We disagree, first, with appellants' contention that PSC is without statutory authority to impose a standard of proof other than "preponderance of evidence." In adopting a higher standard PSC acted within its authority, under NMSA 1978, Section 62–6–1, to adopt its own procedural rules. *See New Mexico Department of Motor Vehicles v. Gober,* 85 N.M. 457, 513 P.2d 391 (1973); *In re Sedillo,* 84 N.M. 10, 498 P.2d 1353 (1972).

This Court, however, does express its deep concern regarding the reasonableness of this heightened standard of proof, especially since a "preponderance of evidence" standard is customary in administrative and other civil proceedings. *New Mexico Department of Motor Vehicles v. Gober.* Appellants are correct that there is some inevitable imprecision in the categorization of expenses as allowable or unallowable, and they claim that consequently a "clear and convincing" standard may be impossible to meet. PSC responds, in its brief to this Court, that "the categories need not be exclusive * * * where an ad clearly falls within an allowable category it may be allowed even if, e.g., it incidentally enhances corporate image." This seems to be contradictory to the language in G.O. 31 that disallows advertising expenses which "in whole or in any part" fall within the

unallowable category. G.O. 31, § IV.A.3. This is primarily a matter of the *application* of G.O. 31, however, not of its *issuance*, and it would be premature for us to strike down G.O. 31 now on this basis. We state only that it would be unreasonable to apply G.O. 31 in such a way that even advertising expenses directly beneficial to the ratepayers were not includable in a utility's cost of service.

The record-keeping requirement imposed by G.O. 31 is not arbitrary or unreasonable. The requirement that a record be kept of each advertisement's text and cost is a reasonable means of insuring compliance and is not unduly burdensome.

**Variances.**

G.O. 31 also provides, finally, that municipal utilities and rural electric cooperatives may receive variances exempting them from the requirements of G.O. 31. This allowance for variance does not deny investor-owned utilities of equal protection, because it is rationally based on substantial differences between the different types of utilities. *See McGeehan v. Bunch,* 88 N.M. 308, 540 P.2d 238 (1975). The ratepayers of a municipal utility or electric cooperative have a voice in the management and expenditures of the utility; they also will bear the cost of expenditures whether or not those expenditures are included within operating expenses.

**Conclusion.**

Although we affirm the authority of PSC to *adopt* G.O. 31, we caution PSC that its *application* of G.O. 31 in each case must also be reasonable and lawful.

The district court's judgment upholding the power of PSC to adopt G.O. 31 is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and BRENNAN, District Judge, concur.