BOSTON GAS COMPANY *vs.* DEPARTMENT OF PUBLIC UTILITIES.

Suffolk. March 8, 1989. — June 12, 1989.

Present: WILKINS, LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Public Utilities*, Rate setting, Costs of service. *Gas Company. Due Process of Law*, Public utilities.

On a gas company's appeal from an order of the Department of Public Utilities challenging that portion of the department's 1988 rate decision that, based on a new departmental standard, disallowed certain of the company's advertising expenses, this court, reconsidering aspects of its decision in *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.*, 360 Mass. 443 (1971), concluded that the department was warranted in disallowing, as a cost of service to be reflected in the utility's rates, advertising that was designed to improve the image of the company and that contained no information which might be directly helpful or beneficial to the company's customers (so-called institutional advertising); however, where the department applied its new standard in the decision that announced it, the proceeding was remanded to the department to enable the company to present a prospective case for the allowance of its institutional advertising expenses as a cost of service. [117-121]

On a gas company's appeal from an order of the Department of Public Utilities challenging that portion of the department's 1988 rate decision that abandoned its former position allowing one-half the cost of charitable contributions to be borne by ratepayers and disallowed the company's contributions as a cost of service because the company did not establish on the record that its contributions provided some clear benefit to its ratepayers, this court, reconsidering aspects of its decision in *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.*, 360 Mass. 443 (1971), accepted the department's view that amounts given to charities may be included in the cost of service if they provide some clear benefit to ratepayers, but remanded the proceeding to the department to afford the company an opportunity to present a reasonable, prospective program of charitable giving in light of the department's new standard and to have amounts that meet the department's standard reflected in its rates. [121-124]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 28, 1988.

The case was reported by *Wilkins*, J.

*James K. Brown* (*Bonny E. Sweeney* with him) for the plaintiff.

*Lawrence Fletcher-Hill*, Assistant Attorney General, for the defendant.

The following submitted briefs for amici curiae:

*Roscoe Trimmier, Jr.*, for United Way of Massachusetts Bay & others.

*Franklin M. Hundley, Eric J. Krathwohl, & Daniel R. Avery* for Cambridge Electric Light Company & others.

*Thomas G. Robinson* for Massachusetts Electric Company.

*Patrick W. Hanifin, Wayne S. Henderson & Laurence S. Fordham* for New England Legal Foundation.

WILKINS, J. The Boston Gas Company (company), by this appeal from an order of the Department of Public Utilities (department), challenges those aspects of the department's 1988 rate decision that disallowed certain advertising expenses and all charitable contributions as costs of service that could be recognized in the company's rates charged to its customers. The case is before us on a reservation and report by a single justice of this court.

The first issue concerns the department's refusal on the record before it to recognize the company's institutional or image advertising as a cost of service. The second issue involves the department's determination (also on the record before it) to disallow all charitable contributions as a cost of service. Each issue calls for us to consider the continuing soundness of this court's rulings on these general questions in *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.*, 360 Mass. 443, 482-490 (1971) (the *New England Tel.* case). In that opinion, this court announced rules of law mandating the recognition of reasonable advertising and charitable giving expenses as costs of service. Because circumstances have changed in respects we shall explain, we agree with the department that the rules of the *New England Tel.* case should be abandoned. We accept as proper the new standards announced by the department but agree with the company that the department should have granted the company the opportunity to meet those new standards. We shall remand the case for further proceedings in light of this opinion. ·

1. The department was warranted in disallowing, as a cost of service to be reflected in the company's rates, institutional advertising, advertising that is designed to improve the image of the company and that contains no information which might be directly helpful or beneficial to the company's customers.

Our opinion in the *New England Tel.* case was written at a time when it was generally believed, as cited authorities stated (360 Mass. at 483-484), that a utility should be encouraged to foster growth and that growth would benefit consumers and shareholders alike. We concluded that a utility was "entitled to expend reasonable sums in an effort to retain its current customers, to acquire additional customers, and to sell to all such customers as many of its services as it has available for sale." *Id.* at 483. We said that the utility's managers should make the decision whether institutional advertising is helpful to its business and, if so, what amounts the company should spend. *Id.* Quoting from a Vermont opinion, the court accepted the view that, although such expenses should be carefully scrutinized, they should be disallowed only if it appears clear that they are excessive, unwarranted, or incurred in bad faith. *Id.* at 484. We concluded that the department had attempted without warrant to interfere with the prerogatives of the utility's business managers and thus had acted beyond its authority. *Id.*

Almost ten years later, the Legislature enacted a statute disallowing as a cost of service amounts expended by gas and electric companies for promotional (and political) advertising, subject to certain exclusions. G. L. c. 164, § 33A, inserted by St. 1981, c. 375, § 5, as appearing in St. 1984, c. 189, § 119. This expression of public policy for such companies substantially undercuts the basis for the court's treatment of advertising expenses in the *New England Tel.* case. Section 33A, which is set forth in full in the margin,[1] is concerned with

---

[1] "No gas or electric company regulated by the department under this chapter may recover from any ratepayer of such company any direct or indirect expenditure by such company for promotional or political advertising as defined in this section.

"For the purposes of this section, the following words and phrases shall have the following meanings: —

discouraging gas and electric companies from promoting the use of gas and electricity, respectively. The language of § 33A was taken largely from the Federal Public Utility Regulatory Policies Act of 1978. See 16 U.S.C. § 2623 (b) (5) and § 2625 (h) (2) (1982) (electric utilities), and 15 U.S.C. § 3203 (b) (2) and § 3204 (b) (2) (1982) (gas utilities).[2] The object of the Federal act was to promote energy conservation by federally regulated utilities in response to the nationwide energy crisis and to encourage States to adopt similar regulations. See *Federal Energy Regulatory Comm'n* v. *Mississippi*, 456 U.S. 742, 745 (1982). If the use of energy was not encouraged by promotional advertising, it was assumed that less energy would be used.

This case, of course, does not involve promotional advertising. Promotional advertising is advertising designed "to inform customers of new service or of other information which might

---

"'Advertising', the commercial use by a utility of any media, including newspaper, printed matter, radio, and television, in order to transmit a message to a substantial number of members of the public or to such utility's consumers.

"'Political advertising', any advertising for the purpose of influencing public opinion with respect to legislative, administrative, or electoral matters, or with respect to any controversial issue of public importance.

"'Promotional advertising', any advertising for the purpose of encouraging any person to select or use the service or additional service of a utility regulated by the department, or the selection or installation of any appliance or equipment designed to use such utility's service.

"For the purposes of this section, the terms 'political advertising' and 'promotional advertising' shall not include advertising which informs consumers of any utility on how they can conserve energy, reduce peak demand for energy, or other services, or otherwise use the services of any utility in a cost-efficient manner; is required by federal or state laws or regulations; informs consumers regarding service interruptions, safety measures, or emergency conditions; concerns employment opportunities with a utility; or relates to any explanation or justification of existing or proposed rate schedules, or notification of hearings thereon [*] which informs consumers of and stimulates the use of products or services which are subject to direct competition from products or services of entities not regulated by the department or any other government agency."

The section appears to need a semicolon and the word "or" at the point at which an asterisk in brackets appears in the quotation.

[2] The last clause, appearing after the asterisk in the section as appearing in note 1 above, does not appear in the Federal statute.

be helpful or economical." *New England Tel., supra* at 482. The recognition or rejection of such advertising is now governed by § 33A with its prohibitions subject to stated exceptions. The *New England Tel.* case also did not involve promotional advertising. Each party in the *New England Tel.* case accepted promotional advertising as an appropriate cost of service. The debate then, as in this case, was over institutional or image advertising.

One might argue that § 33A, therefore, has nothing to do with the advertising allowance dispute in this case and that the *New England Tel.* case is still controlling. We disagree. By enacting § 33A, the Legislature has taken from gas and electric utility management the right to determine that all reasonable promotional advertising costs are includible costs of service. Because, as a matter of public policy, advertising costs most directly related to the growth of the use of gas and electric services have been substantially limited as allowable costs of service, we should consider whether the result in the *New England Tel.* case concerning image advertising has validity at this time.

That the Legislature which enacted § 33A had before it, but did not enact, a provision intended to disallow all advertising expenses as a cost of service (1981 House Bill No. 6316, § 8B) does not bar us from reconsidering the result in the *New England Tel.* case. Legislative silence on the subject of image advertising cannot fairly be seen either as a ratification of our decision in the *New England Tel.* case or as a limitation on this court's authority to rule concerning image advertising.

The *New England Tel.* case espoused a broad principle of managerial prerogative concerning advertising for the benefit of the company. That reasoning, which no longer fully obtains at least as to gas and electric companies, may explain why a utility should be allowed to advertise to promote its image, but it does not explain why ratepayers, as opposed to shareholders, should shoulder the expense of advertising that does not benefit them in any fairly discernible and direct way. We thus agree with the department, and the strong trend of judicial decisions issued since our opinion in the *New England Tel.*

case,[3] that the cost of institutional or image advertising may be treated as a cost of service only if it benefits ratepayers directly.[4]

The company argues that, if this court should accept the department's standard for the recognition of image advertising as a cost of service, the company did not have a fair chance to present its case for recognition of advertising expenses because the department applied its new standard in the decision that announced it. It is generally unacceptable for an agency to announce a new standard in its final decision in an adjudicatory proceeding and then rule, often not surprisingly, that a party

---

[3] In each of the following cases, cited in inverse chronological order, the court upheld agency regulations or agency decisions excluding institutional advertising expenses from a utility's cost of service unless the utility could show a benefit to ratepayers. See *Public Serv. Comm'n of N.Y.* v. *Federal Energy Regulatory Comm'n*, 813 F.2d 448, 455-456 (D.C. Cir. 1987); *South Cent. Bell Tel. Co.* v. *Public Serv. Comm'n*, 702 S.W.2d 447, 452 (KY. Ct. App. 1985); *El Paso Elec. Co.* v. *New Mexico Pub. Serv. Comm'n*, 103 N.M. 300, 303-304 (1985); *Washington Gas Light Co.* v. *Public Serv. Comm'n*, 450 A.2d 1187, 1230-1231 (D.C. 1982); *Appeal of Concord Natural Gas Corp.*, 121 N.H. 685, 690 (1981); *Cleveland* v. *Public Util. Comm'n*, 63 Ohio St. 2d 62, 72-73 (1980); *State ex rel. Laclede Gas Co.* v. *Public Serv. Comm'n of Mo.*, 600 S.W.2d 222, 228 (Mo. Ct. App. 1980), appeal dismissed, 449 U.S. 1072 (1981); *Rochester Gas & Elec. Corp.* v. *Public Serv. Comm'n of N.Y.*, 51 N.Y.2d 823, 825 (1980), appeal dismissed, 450 U.S. 961 (1981); *Pacific Northwest Bell Tel. Co.* v. *Davis*, 43 Or. App. 999, 1016 (1979).

[4] The company complains that the department's standard can never be met because image advertising never directly benefits the ratepayer. The company may be correct, and, if it is, the department has in effect disallowed as a cost of service all institutional or image advertising. See *Public Serv. Comm'n of N.Y.* v. *Federal Energy Regulatory Comm'n, supra* at 456. The question, which is not presented in this proceeding, would then be: how direct must a ratepayer benefit be in order to qualify an institutional advertising expense for rate recognition? See *East Ohio Gas Co.* v. *Public Util. Comm'n of Ohio*, 1 Ohio St. 3d 31, 32 (1982). If any image advertising falls within an exclusion from promotional advertising set forth in § 33A, its recognition as a cost of service seems logically to be required.

The burden of proving the propriety of including institutional advertising expenses in the cost of service rests on the company. See *Fitchburg Gas & Elec. Light Co.* v. *Department of Pub. Utils.*, 375 Mass. 571, 578-579 (1978). We reject any implication to the contrary that could be derived from language that this court quoted from a Vermont opinion in the *New England Tel.* case. 360 Mass. at 484.

who had no notice of that standard failed to meet it. See *New England Tel & Tel. Co.* v. *Department of Pub. Utils.*, 371 Mass. 67, 84 (1976); *NLRB* v. *Majestic Weaving Co.*, 355 F.2d 854, 860-861 (2d Cir. 1966). If the department does not make changes in ratemaking principles by regulation or by prospective adjudicatory decision making, it must grant the party or parties to an adjudicatory proceeding the opportunity to satisfy the requirements of a new rule once that rule (or the possibility of the adoption of a new rule) is announced. The company, therefore, should have been allowed to present, and on remand may now present, a prospective case for the allowance of institutional advertising expenses as a cost of service, either because the proposed expenses satisfy the department's new standard for the recognition of institutional or image advertising or because they fall within an exclusion in § 33A.

2. The department disallowed charitable contributions as a cost of service because the company did not establish on the record "that its corporate charitable giving is reasonable and provides some clear benefit to ratepayers that is essential to serving them." The company's "general assertions of benefit" were not sufficient, in the department's view, "to tie the level of giving to increased sales or decreased costs." In deciding as it did, the department abandoned the position it had taken in 1986, allowing one-half the cost of charitable contributions to be borne by ratepayers. In this proceeding, the company sought to include $172,028 as an allowance for charitable giving.

Whether to allow charitable giving as a cost of service was considered in the *New England Tel.* case (360 Mass. at 489). This court concluded that a regulated public utility may properly expend reasonable amounts for charitable purposes and that the department was obliged to recognize those expenditures as operating expenses for ratemaking purposes. *Id.* We endorsed the view of the New Hampshire Public Service Commission that charitable contributions are vital to establish and improve public relations and are " 'considered much the same as advertising.' " *Id.*

The view that charitable contributions, reasonable in amount, must be reflected in the cost of service even if ratepayers are not direclty benefited is distinctly a minority position in this country. Numerous courts have held that, as a matter of law or in the agency's discretion, a rate regulatory agency properly may disallow all charitable giving as a cost of service. See *Pacific Tel. & Tel. Co.* v. *Public Utils. Comm'n of Cal.*, 62 Cal. 2d 634, 668-669 (1965); *Southern Bell Tel. & Tel. Co.* v. *Florida Pub. Serv. Comm'n*, 443 So. 2d 92, 96 (Fla. 1983); *Illinois Bell Tel. Co.* v. *Illinois Commerce Comm'n*, 55 Ill. 2d 461, 481 (1973); *South Cent. Bell Tel. Co.* v. *Public Serv. Comm'n*, 702 S.W.2d 447, 452 (Ky. Ct. App. 1985); *Chesapeake & Potomac Tel. Co. of Md.* v. *Public Serv. Comm'n of Md.*, 230 Md. 395, 414-415 (1962); *State ex rel. Allain* v. *Mississippi Pub. Serv. Comm'n*, 435 So. 2d 608, 617 (Miss. 1983) (rule announced prospectively); *State ex rel. Laclede Gas Co.* v. *Public Serv. Comm'n of Mo.*, 600 S.W.2d 222, 229 (Mo. Ct. App. 1980); *Cleveland* v. *Public Utils. Comm'n of Ohio*, 63 Ohio St. 2d 62, 73-74 (1980); *Jewell* v. *Washington Utils. & Transp. Comm'n*, 90 Wash. 2d 775, 777-778 (1978). When reasons are given for disallowing charitable contributions, courts generally refer to the imposition on ratepayers of involuntary contributions, the possibility that particular ratepayers may disagree with the objectives of specific charities, and the belief that shareholders, not ratepayers, generally benefit from such gifts.

There is another body of authority, also in conflict with our *New England Tel.* opinion, that allows the inclusion of charitable gifts in the cost of service if the utility makes a showing that the gifts directly benefit ratepayers. See *Washington Gas Light Co.* v. *Public Serv. Comm'n of the D.C.*, 450 A.2d 1187, 1230-1231 (D.C. 1982); *El Paso Elec. Co.* v. *New Mexico Pub. Serv. Comm'n*, 103 N.M. 300, 302-303 (1985); *Detroit Edison Co.* v. *Public Serv. Comm'n*, 127 Mich. App. 499, 522-524 (1983) (upholding commission decision allowing some and disallowing other charitable gifts as operating expenses); *Providence Gas Co.* v. *Burman*, 119 R.I. 78, 99-100 (1977). See generally Annot., 59 A.L.R.3d 941 (1974 & Supp.

1988). In its decision, the department placed itself in this latter group. The company suggests, however, that the task of showing a direct benefit to ratepayers from a charitable gift is so great that the department in practical effect has joined the former group, barring all charitable gifts as a cost of service.

In reaching its decision to reject the rule we announced in the *New England Tel.* case, the department relied in part on the adoption of G. L. c. 164, § 33A, concerning limitations on the allowance of promotional and political advertising as a cost of service. The department noted the statement in the *New England Tel.* case that charitable giving was much like advertising, and concluded that, if advertising expenses have received a new look, so should charitable gifts. We see no justification for reconsidering the recognition of charitable giving expenses just because § 33A, a statute concerned with energy conservation, was enacted. Moreover, we question the validity of this court's statement that charitable giving is "much the same as advertising" (*New England Tel.*, 360 Mass. at 489). We agree, however, that the authority of the department to restrict the inclusion of charitable gifts in the cost of service should be reexamined. The conclusion in the *New England Tel.* case that a utility may make reasonable charitable gifts to serve its corporate purposes does not guide us in deciding how to allocate the responsibility for the costs between ratepayers and shareholders.

We accept the department's view that amounts given to charities may be included in the cost of service if they provide some clear benefit to ratepayers. The concept of direct or essential benefit to ratepayers must, however, be given appropriate interpretation.

In the test year used as a base for determining costs of service in this proceeding, the company provided $20,000 in matching funds to supplement charitable gifts made by its employees. Reasonable fringe benefits for employees help to attract and retain employees. As fringe benefits that promote employee good will, assuming the plan is reasonable in scope, the company's charitable gifts made to match its employees' gifts seem to benefit ratepayers directly and, if they do, they

should be recognized as a cost of service. The test is not what the charity is. It is that matching charitable gifts by the company fall in the category of employee benefits. On remand the department should consider whether to recognize this form of charitable gifts as a cost of service.

Other charitable gifts may be less clearly includible in the cost of service. Two-thirds of the company's charitable gifts during the test year went to the United Way. It is not obvious on this record whether such a gift, even though made to charities largely serving within the company's area of service, provides any benefit to ratepayers sufficiently direct to warrant inclusion of the expense in the cost of service.

For the same reason we set forth above with respect to further consideration of the company's claim for recognition of institutional advertising as a cost of service, the company, if it wishes, should have an opportunity to present a reasonable, prospective program of charitable giving in light of the department's new standard and to have amounts that meet the department's direct benefit standard reflected in its rates at this time.

3. The department's decision is vacated in so far as it concerns advertising expenses and charitable gifts as a cost of service, and the proceeding is remanded to the department for further consideration in light of this opinion.

*So ordered.*