**Kenneth R. GIFFORD et al.**

**v.**

**CENTRAL MAINE POWER COMPANY.**

Supreme Judicial Court of Maine.

Feb. 18, 1966.

Frank E. Southard, Jr., John G. Feehan, Augusta, for plaintiffs.

Seward B. Brewster, Augusta, Pierce, Atwood, Scribner, Allen & McKusick by Vincent L. McKusick and Gerald M. Amero, Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

WEBBER, Justice.

This is an appeal from a decision of the Public Utilities Commission taken pursuant to 35 M.R.S.A. Sec. 303. Complainants are all residential customers of the respondent utility and are all connected with the fuel oil business. They complain that as ratepayers they are aggrieved by a practice instituted by the respondent of offering certain promotional allowances designed to encourage and promote increased use of electric energy by residential customers. They assert that these practices are "unreasonable, unlawful and unjustly discriminatory" and thus in violation of 35 M.R.S.A. Sec. 102. This statute provides: "If any public utility makes or gives any *undue* or *unreasonable* preference or advantage to any particular person, firm or corporation or any undue or unreasonable prejudice or disadvantage in any respect whatever, such public utility shall be deemed guilty of *unjust discrimination* which is prohibited and declared unlawful." (Emphasis ours)

The Commission described the promotional allowances in question as follows:

"a. it is currently making a cash allowance of fifty dollars to those only of its residential customers who change an existing service entrance to one of 100-ampere capacity and add at least one of the following 240-volt appliances: water heater, range with surface

unit and oven, dryer, combination washer-dryer, a 120-volt freezer, or a combination refrigerator with a zero degree freezer.

b.  it is currently making a cash allowance of seventy-five dollars to those only of its residential customers who change an existing service entrance to one of 200-ampere capacity and initially add at least one of the appliances listed in subparagraph (a) hereof.

c.  it is currently making a cash allowance of ten dollars per kilowatt of permanently installed electric heating equipment to the owner of a home which is built for or converted to the use of electricity as the primary method of heating.

d.  it is currently making a cash payment of ten dollars to the purchase price of a quick recovery electric water heater to be installed in its service area."

A witness who serves the respondent as "operating engineer-electrical" testified that maximum economies are achieved in the electric utility business when generating, transmission, distribution and transformation facilities are added to a system in large enough "blocks" or units to provide for both operating efficiency and future growth. It was his opinion that as a result of its normal program of construction the respondent has available capacity in all such facilities to serve any additional load added through the promotional program at only the incremental or fuel cost required to produce the additional kilowatt hours. The respondent's officer in charge of sales testified that the increasing of sales of electricity through promotional programs makes possible greater utilization of existing facilities, thereby spreading capital costs and lowering unit costs to the benefit of all customers; that the cost of the entire allowance program should be recovered within eleven months by additional revenue pro-

duced after meeting incremental (fuel) costs; that the allowances were reasonable in amount both in relation to other legitimate promotional expenses of the company and when compared to the programs of other regulated utilities; and that the program was effective in increasing sales. Statistical evidence tended to support these opinions and conclusions. The respondent's witnesses expressed concern with respect to a decline in its percentage increase in sales of kilowatt hours to residential customers in 1963, a trend which it sought to correct by an authorized decrease in rates and by an active promotional campaign of which the allowance program formed a part.

■ We are satisfied that the findings of the Commission are fully supported by credible evidence. Its decision states in part:

"Because of the 'block' system of plant construction, Central Maine Power has available plant capacity which can be used to serve the load added through the promotional program. Consequently, the Company will not be forced into an expansion program at the expense of existing rate-payers. The amounts expended in the promotional allowance program are reasonable (both in individual payments and aggregate amount) when compared to the increased revenue to be realized from the use being promoted. Moreover, the total amounts being expended in the program are also reasonable when compared to Central Maine Power's total promotional and advertising budget.

The record shows further that the promotional allowances have been effective to encourage increased use of electricity and thus will tend to decrease the overall cost of operations, thus benefiting all customers of Central Maine Power. The allowances paid are also being recovered within a reasonably short period of time by increased

revenues derived from the promoted use."

The Commission concluded that "the allowances complained of in this proceeding are neither unjustly discriminatory nor otherwise in violation of any provision of the law."

■ Only three judicial opinions have been called to our attention which deal with issues similar or closely related to those at hand. In Rossi v. Garton (1965), 88 N.J. Super. 233, 211 A.2d 806 (App. den. September 24, 1965) a municipally owned electric utility offered a credit of $150 against his electric bill to anyone who installed complete electric home heating. Holding the defendant to "the standards which would be applied to a private company", the court nevertheless deemed it "perfectly reasonable and good business to offer inducements to prospective customers to increase their comsumption of electricity." The opinion notes that "[d]iscriminations are not forbidden but only *unjust* discriminations." (Emphasis ours) The New York court, interpreting a statute designed as is ours to prevent unjust discrimination, approved promotional allowances in the case of In re City Ice & Fuel Co. (1940), 260 App.Div. 537, 23 N.Y.S.2d 376 (App. Den. City Ice & Fuel Co. v. Maltbie, 285 N.Y. 858, 32 N. E.2d 834). In that case Consolidated Edison Co. initiated a sales campaign in cooperation with appliance dealers. The utility contributed $5.00 toward an allowance of $9.50 made for the trade-in of an ice box on the purchase of a mechanical refrigerator, all as part of an advertising and promotional campaign in which the utility assumed other costs as well. The court was satisfied that no "unjust discrimination prohibited by law" was involved. At page 381 of 23 N.Y.S.2d the court said in part:

"When a utility has established rate classifications available to all customers for a like and contemporaneous service it has fulfilled its obligations under the statute. When it treats all its appliance customers on a fair and equitable basis

it has done all the law requires it to do. Subject to the two leading prohibitions that its charges shall not be unjust or unreasonable, and that it shall not unjustly discriminate so as to give undue preference or disadvantage to customers similarly circumstanced, the law leaves the utility, as it was at common law, free to extend its facilities and to afford inducements to encourage its business and to foster its interests on the same principles which are followed in other pursuits and trades."

See also Vitacolonna v. City of Philadelphia, (1955) 382 Pa. 399, 115 A.2d 178, 188. We note with interest that the Commissions in other states have recently reached the same result under somewhat similar circumstances. Re Delaware Power & Light Co., 56 P.U.R.3d 1 (Del.P.S.C.1964); Re Savannah Electric & Power Co., 45 P.U.R.3d 88 (Ga.P.S.C.1962).

■ Although in Central Maine Power Co. v. P.U.C. (1957), 153 Me. 228, 243, 136 A.2d 726, 736 we were reviewing only the Commission's disallowance of certain promotional expenses as an operating charge for rate purposes and were not concerned with promotional *allowances* such as are in issue here, we did have occasion to point out that under ordinary circumstances the promotion and development of the utility is an exclusive function and prerogative of management. We noted that this utility is engaged in vigorous competition with suppliers of other forms of fuel or energy, that a business either grows or decays and that when it is allowed to disintegrate there is damage to customers as well as to stockholders. "Within the limits of reason" and, as is emphasized in the instant case, within the limits set by the applicable statutes, management may seek aggressively to build the demand for its product. The Commission has wisely pointed out that it will not hesitate to apply the rule of reason in assessing the validity of any promotional allowance program. It said: "This does not mean, however, that the same type of pro-

motional activities resulting in larger or more disproportionate allowances, discounts or rebates would necessarily meet with the same fate (approval). It is readily apparent that at some point such allowances must reach a magnitude which would bring them within the prohibitions provided for in Section (102)." We concur in the Commission's view of the matter. It suffices to say that in this instance the promotional allowances could be reasonably expected to produce ultimate benefits to every customer and were fairly shown not to be excessive, disproportionate, unreasonable or unjustly discriminatory within the meaning of the statute.

Appeal denied.