STATE of Oklahoma, Appellee,

v.

**OKLAHOMA GAS AND ELECTRIC COM-PANY, a corporation, and Public Service Company of Oklahoma, a corporation, Principal Appellants,**

and

Oklahoma State Homebuilders Association, a corporation, et al., Separate Appellants.

**Nos. 46255, 46283, 46287 and 46234.**

Supreme Court of Oklahoma.

March 11, 1975.

Jack A. Swidensky, Gen. Counsel, Guy E. Taylor, Richard Harris, Asst. Gen. Counsels, Oklahoma City, for appellee.

Rainey, Welch, Wallace, Ross & Cooper by Hugh D. Rice, Oklahoma City, for Okl. Gas & Electric Co.

Robert L. Lawrence, Richard H. Ruth, Tulsa, for Public Service Co. of Okl.

Loeffler & Allen by David H. Loeffler, Jr., Tulsa, for Okl. Homebuilders Ass'n.

Fitzgerald, Houston & Worthington by Clee Fitzgerald, Stillwater, for Okl. Broadcasters Ass'n and Okl. Telecasters Ass'n.

Wayne Quinlan, Oklahoma City, for Okl. Press Ass'n, Okl. Press Service and for principal appellants.

Oliver A. Houck, Robert M. Hallman, Washington, D.C., for Nat. Wildlife Federation and Okl. Wildlife Federation.

Robert A. Huffman, Donald A. Kihle, John A. Gaberino, Jr., Tulsa, for Oklahoma Natural Gas Co. amicus curiae.

Andrew T. Dalton, Jr., Brian Gaskill, Tulsa, for Sierra Club and Oklahoma Chapter of the Sierra Club.

Speck, Philbin & Fleig by John K. Speck, Oklahoma City, for Okl. State Chamber of Commerce and separate appellants, amicus curiae.

BERRY, Justice:

Numerous separate appeals from Corporation Commission order No. 94712, entered in cause No. 24727, have been consolidated for determination herein.

The order sets out findings by the Commission, provides certain contributions by public utilities shall be excluded from operating expenses for ratemaking purposes, and prohibits public utilities from making expenditures for certain types of advertisements and from engaging in certain promotional activities.

Paragraph 13 of the "Findings" directs utilities to file proposed rate adjustments to pass savings resulting from the order, if any, on to customers. We previously stayed enforcement of the order pending determination of this appeal.

Appellants first contend the proposed order was not "published in substance" as required by Art. IX § 18, Okla.Const.

Art. IX § 18, supra, grants the Commission supervisory power over transportation and transmission companies. However, its notice provisions are applicable to proceedings involving public utilities. City of Bartlesville v. Corporation Commission, 82 Okl. 160, 199 P. 396.

These notice provisions provide:

"* * * before said Commission shall make or prescribe any general order * * * the contemplated general order * * * shall first be published in substance, not less than once a week, for four consecutive weeks, in one or more of the newspapers of general circulation published in the county in which the Capitol of this State may be located, together with the notice of the time and place, when and where the Commission will hear any objections which may be urged by any person interested, against the proposed order * * * and every

such general order * * * made by the Commission, shall be published at length, for the time and in the manner above specified, before it shall go into effect * * *"

The notice published in this case provided in part:

"NOTICE IS HEREBY GIVEN, that * * * have filed an Application for an investigation and a General Order establishing rules and regulations governing promotional practices by public utilities.

"Such proposed General Order would in substance establish rules and regulations in relation to the following utility practices:

(1) Advertising;

(2) Promotional allowances;

(3) Contributions.

* * * * * *

"AND NOTICE IS FURTHER GIVEN, that after hearing, the Commission will, regardless of the relief requested in the Application, issue such orders and grant such relief as it deems proper, necessary, fair, reasonable and equitable in the premises whether or not specifically prayed for in the Application."

Section 18, supra, requires proposed general orders to be "published in substance" and adopted general orders to be "published at length."

"Substance" has been defined as being synonymous with "subject." McMahan v. Felts, 159 Tenn. 935, 19 S.W.2d 249.

■ The purpose of this provision is to allow interested persons an opportunity to express objections to proposed general orders prior to their adoption. Anyone reading this notice would know the proposed order might limit advertising, promotional allowances and charitable contributions of public utilities. We further note that appellants, except Oklahoma State Homebuilders Association, were present at the hearing and made no complaint concerning lack of notice until after regulations had been entered. We conclude the notice was sufficient.

Appellants next object to the emergency provision of the order which provides:

"This Order shall be effective as an Emergency Order on the date it is entered; and shall be effective as a General Order upon completion of publication as required by Art. 9, § 18, Oklahoma Constitution."

An emergency order becomes effective immediately upon adoption without necessity of publication.

■ We find no prohibition against adopting an order as both a general and emergency order. Since publication has now been completed the emergency provisions of the order are moot.

■ Appellants next contend the Commission failed to comply with 75 O.S.1971 § 251, which requires state agencies to file copies of rules and regulations with the Secretary of State and the State Librarian and Archivist "within three days of their adoption excluding holidays, Saturdays, and Sundays." Section 252 provides rules or regulations not filed as provided in § 251 shall be void.

Order No. 94712 was originally adopted on December 21, 1972. On the third working day after its adoption, certain parties filed a petition for rehearing which was withdrawn on December 29. The Commission filed the order on the third working day after December 29.

In Southwestern Bell Telephone Co. v. State, 181 Okl. 246, 71 P.2d 747, appeal dismissed, 58 S.Ct. 528, 303 U.S. 206, 82 L.Ed. 751, we considered the Commission's authority with respect to legislative type hearings and held in paragraph 1 of the syllabus:

" * * * the commission has implied power and authority to entertain an application for rehearing on the matter and the power to set aside its order and upon reconsideration of the matter to enter another order; provided such is done within a reasonable time and before an

appeal from such order has been lodged in the Supreme Court and no prejudice thereby is shown."

We hold the petition for rehearing extended the time in which to file the regulations as provided in §§ 251–252, supra.

Appellants next challenge the Commission's authority to adopt the substantive rules set out in the order.

The order was promulgated pursuant to 17 O.S.1971 § 152, which provides in part:

"The Commission shall have general supervision over all public utilities, with power to fix and establish rates and to prescribe rules, requirements and regulations, affecting their services, operation and the management and conduct of their business * * *"

■ This statute authorizes the Commission to require a public utility to furnish adequate service to those it purports to serve [Oklahoma Gas & Electric Co. v. Wilson & Co., 146 Okl. 272, 288 P. 316], without unjust discrimination [Hixon v. Snug Harbor Water & Gas Co., Okl., 381 P.2d 313], at the lowest reasonable rates consistent with the interests of the public and the utilities [Community Natural Gas Co. v. Corporation Commission, 182 Okl. 137, 76 P.2d 393].

However, in Lone Star Gas Co. v. Corporation Commission, 170 Okl. 292, 39 P.2d 547, we stated:

"The powers of the Commission are to regulate, supervise, and control the public service companies in their services and rates, but these powers do not extend to an invasion of the discretion vested in the corporate management. It does not include the power to approve or disapprove contracts about to be entered into, nor to the approval or veto of expenditures proposed. The powers of the Commission, as respects the acts of public service companies, are limited to an investigation of these acts to determine whether or not they have a reasonable and fair effect upon the rights of the public, and to take steps to avoid an un-reasonable or unfair or prejudicial effect upon the public rights, if such be found."

We stated by way of illustration that an order entitling the utility to earn 10% on its investment would be a proper exercise of the Commission's authority.

With reference to disposal of this income we stated:

" * * * but the Commission may not go further and insist upon Community declaring dividends in keeping therewith. That is a matter for the discretion of corporate management. * * *

" * * * What the company does with its income is no concern of the rate-making body, so long as a full and complete disclosure thereof is made when called for in order that its effect under all of the circumstances may be judged properly."

We then noted the utility could not exhibit improvident expenditures to justify a rate increase.

■ Furthermore, regulation and control of private business is sustained by reference to the police power. Southern Oklahoma Power Co. v. Corporation Commission, 96 Okl. 53, 220 P. 370. The test of validity of all exercise of the police power is one of reasonableness. City of Guthrie v. Pike & Long, 206 Okl. 307, 243 P.2d 697. A police measure must fairly tend to accomplish the purpose of its enactment, and must not go beyond the reasonable demands of the occasion. State v. Waterfield, 167 Okl. 209, 29 P.2d 24. When private rights are subordinated to this authority, the extent such rights are thereby impaired, as well as the public benefit to be derived therefrom, must be considered in defining a proper exercise of the police power. Oklahoma Natural Gas Co. v. Choctaw Gas Co., 205 Okl. 255, 236 P.2d 970.

Rule 5 of the order provides:

"(a) All gifts, donations and contributions made by a regulated utility shall be treated as 'below the line' expenses, and excluded from operating expenses allow-

able for rate making purposes; including, but not limited to the following:

(1) contributions to charitable, religious or educational institutions or associations;

(2) contributions to civic, community, social or public welfare organizations or associations;

(3) payments to cities or towns in excess of franchise taxes or charges which the regulated utility is obligated to pay pursuant to an enforceable written contract or franchise.

"(b) Dues and fees paid to industry, scientific and professional organizations, which in amount bear a reasonable relationship to benefits received from membership therein, shall not be restricted by this Rule.

"(c) Payments into a foundation or trust created or controlled by the utility shall not in any event exceed one-half of one percent of gross utility revenues in any single fiscal year."

Appellants contend charitable contributions are reasonable business expenses which should be allowed as operating expenses for ratemaking purposes.

In Carey v. Corporation Commission, 168 Okl. 487, 33 P.2d 788, we held in paragraph 11 of the syllabus:

"A public service company is not entitled to any increase in its rates in order to enable it to make donations or contributions to charitable or civic causes."

In the body of the opinion we stated:

"Next is the question of dues, donations, and philanthropies of the Company. It is a matter for the discretion of corporate management in making donations and paying dues. In that respect a corporation does not occupy a status far different from an individual. An individual determines the propriety of joining organizations, and contributing to their support by paying dues, and all contribution to public charities, etc., according to his means. He does not make such contributions above his means with the hope that his employer will increase his compensation accordingly. A corporation likewise should not do so. Its ultimate purpose, from its own standpoint, is to earn and pay dividends. If, as a matter of judgment, it desires to take part of its earnings, just as would an individual, and contribute them to a worthy public cause, it may do so; but we do not feel that it should be allowed to increase its earnings to take care thereof."

Appellants recognize this case but contend when it was decided Oklahoma was under the common law rule prohibiting corporate management from disbursing corporate funds for such purposes unless the expenditure would benefit the corporation.

They note the legislature subsequently enacted 18 O.S.1971 § 1.19(11), authorizing business corporations to make contributions to charitable and civic organizations in such sums as the directors or trustees deem expedient and in their judgment will benefit or contribute to the corporate or public interest.

They further cite subsequently enacted federal and state statutes allowing corporations income tax deductions for charitable contributions.

They also cite cases from other jurisdictions holding such contributions may be charged as operating expenses if they are productive of good community relations which will benefit the utility or its patrons, and cases holding such payments should be recognized as operating expenses because they are voluntary payments for support of charitable causes which would otherwise require funding through local taxes which would be deductible as operating expenses.

■ The Commission's order does not conflict with 18 O.S.1971 § 1.19(11), supra. It does not prohibit public utilities from making contributions but denies the right to include such sums as operating expenses for ratemaking purposes.

As concerns the contention contributions support charitable causes which would otherwise require funding through local taxes we note Pacific Telephone & Tel. Co. v. Public Utilities Com'n, Cal., 6 Cal.2d 634, 44 Cal.Rptr. 1, 22, 401 P.2d 353, 374, wherein the court stated:

"* * * The commission * * * observes that 'Dues, donations and contributions, if included as an expense for rate-making purposes, become an involuntary levy on ratepayers, who, because of the monopolistic nature of utility service, are unable to obtain service from another source and thereby avoid such a levy. Ratepayers should be encouraged to contribute directly to worthy causes and not involuntarily through an allowance in utility rates. [Pacific] should not be permitted to be generous with ratepayers' money but may use its own funds in any lawful manner.'

"The commission further points out that, conceding worthiness of the donees and benefits in good will reaped by Pacific, many ratepayers may not approve various of the donations made and they should be permitted to exercise their own free choice in such matters. Assuming that as argued by Pacific many of the objects of its bounty might otherwise require or receive support from taxpayers and that it is thus helping to keep taxes from rising, nevertheless Pacific is not authorized to exact from its customers payments in lieu of taxes. * * *"

"* * * we hold that the policy adopted by the commission to exclude such contributions from operating expenses for rate-fixing purposes is correct."

See also Chesapeake & Potomac Tel. Co. v. Public Service Com'n, 230 Md. 395, 187 A.2d 475; Illinois Bell Tel. Co. v. Illinois Commerce Com'n, 303 N.E.2d 364.

We conclude Rule 5 should be affirmed subject to the following exceptions.

■ We construe paragraph (c) to mean amounts paid into foundations or trusts shall be excluded from operating expenses for ratemaking purposes and therefore these payments will not affect rates. We conclude the limitation upon the amount of these contributions is invalid because the manner in which a public utility spends its return on investment is of no concern to the Commission so long as rights of public are not prejudiced. Lone Star Gas Co. v. Corporation Commission, supra.

■ Rule 5(a)(3), which we hold valid, excludes from operating expenses "payments to cities and towns in excess of franchise taxes or charges which the regulated utility is required to pay pursuant to an enforceable written contract or franchise."

Oklahoma Gas and Electric Company notes it disposed of one-half of savings resulting from 1964 federal tax reduction by agreeing to pay additional 1% franchise allowance to municipalities in its service area. Municipalities which have held new franchise elections have adopted this payment as a condition of the franchise. However, payments are also made to municipalities which have not adopted new franchise agreements.

In this case the Commission merely adopted the general rule. It made no determination as to whether the rule excludes these payments from operating expenses for ratemaking purposes, and that issue is not before us.

Rules 3 and 4 of the order regulate advertising by public utilities.

Rule 4 permits expenditures for "consumer advertising" [Advertising designed to inform consumers of rates, charges, conditions of service, benefits and savings available, and proper precautions and emergency procedures] and "conservation advertising" [Advertising designed to inform consumers of means to conserve energy and reduce usage].

Rule 3(a)(2) prohibits utilities from making expenditures for institutional advertising. Institutional advertising is defined as advertising designed to promote the corporate image of the utility, and present it in a favorable light to the public and potential investors.

By definition institutional advertising is not designed to increase consumption of energy.

Rule 3(a)(2) prohibits utilities from expending money for institutional advertising regardless of whether such expenditures are passed on to ratepayers. This greatly impedes the utilities' ability to present their views to the public. The only argument presented to support the rule is "the product being hawked is not utility service, but the corporate image and such expenses benefit the shareholder rather than the ratepayer and should be borne accordingly."

█ The same end could be achieved by disallowing such expenditures as operating expenses for ratemaking purposes and this method would not impede the utilities' ability to communicate with the public. We conclude the prohibition on expenditures for institutional advertising is an unreasonable means of protecting ratepayers from these expenditures. Rule 3(a)(2) is invalid.

Furthermore, we conclude some institutional advertising expenses do benefit ratepayers.

In New England T. & T. Co. v. Department of Pub. Util., Mass., 275 N.E.2d 493, the court quoted from In re Consolidated Edison Co. of N. Y., Inc., 41 PUR 3rd 305, as follows:

"What is of concern here are advertisements which are obviously designed to project a favorable image of the company to its customers, its existing stockholders or potential investors. To the extent that such advertising fosters sound consumer relations or encourages people to invest in the company, it seems clear that the consumers as well as the stockholders, are ultimately benefited

through the lessening of the expense of doing business * * * as long as they are within the limits of reason, and so long as these expenses do not exceed what is reasonably necessary and proper in the particular case * * * there is no ground to distinguish such costs from other necessary and proper expenses."

This does not mean the Commission must allow all institutional advertising expenses as operating expenses for ratemaking purposes.

In New England T. & T. Co. v. Department of Pub. Util., supra, the court stated such expenses could be disallowed or reduced for ratemaking purposes if "it clearly appears they are excessive or unwarranted or incurred in bad faith."

█ We conclude the Commission may disallow any institutional advertising expenditures from operating expenses for ratemaking purposes unless the utility establishes such expenditures benefit all ratepayers.

Rule 3(a)(3) prohibits utilities from making expenditures for promotional advertising, which is advertising designed to increase usage, obtain new customers, or encourage use of one form of energy over another.

Rule 3(a)(1) prohibits utilities from making expenditures for payment of all or part of the cost of advertising the sale of any appliance, equipment or service; or sale or rental of any home, mobile home, duplex, apartment, business or commercial building or premises.

Rule 1(a) prohibits the following promotional practices:

(1) payments to any person in connection with sale or installation of any appliance, equipment or service;

(2) furnishing of consideration to any person in connection with installation or furnishing of utility service, or for the purpose of inducing the use of service or additional service of the utility, or the selection or installation of appliances or

equipment designed to use the utility's service;

(3) extensions of credit for the purchase or installation of appliances, equipment or service;

(4) furnishing of utility service or furnishing, installing, repairing, modifying or maintaining appliances, equipment, wiring or piping at no cost or less than cost except in accordance with terms and conditions of service on file with and approved by the Commission and applicable Rules of the Commission governing furnishing utility service;

(5) furnishing architectural or engineering service, plans, drawing or specifications, in connection with installation of equipment or furnishing of service; except studies to determine cost of proposed installation over the authorized allowance for free extension of service are not prohibited;

(6) installation, furnishing or ownership of lines, pipes, appliances or equipment beyond the point of delivery of service to the consumer; or making of loans, guarantees of loans, gifts, grants or payments to any person for work done or service, or appliances installed beyond the point of delivery to the consumer;

(7) guarantee of maximum cost of utility service to any person or for any premises or installation.

■ The Commission argues that if such expenditures do not sell energy they are wasteful and ratepayers should not be required to pay them. This argument does not justify prohibiting such expenditures because the same result could be obtained by excluding such expenditures from operating expenses for ratemaking purposes. Lone Star Gas Co. v. Corporation Commission, supra.

The Commission further argues that if such practices sell energy they increase the use of fossil fuels and should be prohibited. In this regard the Commission notes in Oklahoma natural gas is used to produce electricity.

For purposes of answering this contention we assume the Commission's jurisdiction over public utilities extends to the area of conservation of energy.

However, most people are well informed concerning potential uses of gas and electricity. As stated in the Commission's brief "The utility need not solicit customers. The public is clamoring for service. The utility need only connect."

Furthermore, the Commission's Findings 5 and 8 recognize many promotional expenditures are designed to achieve conversion to competing utilities, and to instill preferences for one form of energy over another, rather than to increase overall consumption of energy.

Also, the Commission does not have jurisdiction over appliance manufacturers and distributors, and these rules do not prohibit appliance manufacturers and distributors from advertising their products.

■ Due to these factors we conclude the prohibited practices and expenditures have little, if any, affect upon overall consumption of energy. As long as appliance manufacturers and distributors are allowed to advertise their products, it is arbitrary to deny utilities the right to counteract this advertising at the expense of the stockholders on the ground promotional advertising and practices by utilities increase overall consumption of fossil fuels. We conclude Rule 3(a)(3) is invalid.

We recognize there was testimony that if peak load demand for electricity exceeds peak capacity a "brownout" will occur.

However, the Commission's Finding 4 recognizes electrical companies in Oklahoma are operating well within peak load capacity and natural gas supplies have been interrupted only infrequently when extremely cold weather caused short term demand in excess of system supply.

■ We conclude that if a particular utility faces a foreseeable danger of being unable to meet peak demand the Commission may have authority to prohibit it from engaging in any promotional activities

which would further increase its peak demand. However, this will not justify a rule prohibiting all utilities from engaging in such activities.

Much of the above discussion concerning promotional advertising is also applicable to the rules concerning promotional practices.

However, the Commission further asserts § 152, supra, grants it jurisdiction to promulgate rules and regulations affecting service and most of the prohibited promotional practices constitute the furnishing of services. This may be so but the Commission must have some basis for prohibiting the furnishing of these services.

The Commission asserts promotional payments to customers constitute lessening of the approved rates to those favored customers and payments to builders constitute an attempt to cause builders to purchase appliances on the basis of which utility will pay the most rather than on such factors as economy or quality of service.

We have held § 152, supra, authorizes the Commission to require utilities to furnish adequate service without unjust discrimination. Hixon v. Snug Harbor Water and Gas Company, supra.

However, attempts to disallow promotional expenditures as operating expenses for ratemaking purposes have been held to constitute an invasion of the discretion reserved to corporate management if the expenditures are designed to produce ultimate benefits to every customer and are not excessive or unwarranted. Central Maine Power Co. v. Public Utilities Com'n, 153 Me. 228, 136 A.2d 726; Public Service Company of New Hampshire v. State, 102 N.H. 150, 153 A.2d 801; City of El Dorado v. Arkansas Public Service Com'n, 235 Ark. 812, 362 S.W.2d 680. It has also been held reasonable promotional allowances do not violate constitutional and statutory provisions prohibiting unjust discrimination. Rossi v. Garton, 88 N.J.Super. 233, 211 A. 2d 806; Gifford v. Central Maine Power Co., Me., 217 A.2d 200.

■ We conclude promotional practices which are reasonably calculated to improve the utilities load factor and benefit all consumers by reducing the average unit cost of energy are not unjustly discriminatory, and prohibitions against such practices constitute an invasion of the discretion reserved to corporate management.

■ We conclude Rules 1(a)(1), 1(a)(2), 1(a)(3), 1(a)(5), 1(a)(6) and 3(a)(1) are invalid because they prohibit the enumerated promotional practices without regard to whether they are reasonably calculated to benefit all consumers of the utility's service.

■ Part 4 of Rule 1(a) merely requires utilities to perform certain acts in accordance with rules of service on file with the Commission and applicable rules of the Commission. We conclude it is not invalid on its face.

■ We conclude Rule 1(a)(7), which prohibits a utility from guaranteeing the maximum cost of utility service to any person or for any premises or installation, is valid.

■ This does not mean the Commission must allow all expenditures for promotional advertising and practices as operating expenses for ratemaking purposes.

■ Promotional expenditures may be excluded from operating expenses for ratemaking purposes if such expenditures are excessive, unwarranted, unreasonable, or incurred in bad faith. Public Service Company of New Hampshire v. State, supra; City of El Dorado v. Arkansas Public Service Com'n, supra; Central Maine Power Co. v. Public Utilities Com'n, supra; West Ohio Gas Co. v. Public Util. Com'n, 294 U.S. 63, 79 L.Ed. 761, 55 S.Ct. 316.

■ Promotional expenditures which tend to increase peak demand of a utility which is having difficulty in meeting its peak demand are unwarranted. Public Service Company of New Hampshire v. State, 311 A.2d 513.

We conclude the Commission may disallow any expenditure for promotional practices or advertising from operating expenses for ratemaking purposes unless the utility establishes such expenditure is demonstrated to be beneficial to all consumers.

We conclude Rules 3(a)(1), 3(a)(2), 3(a)(3), 1(a)(1), 1(a)(2), 1(a)(3), 1(a)(5) and 1(a)(6), and 5(c) are invalid. The remainder of the order is valid.

All Justices concur.

Justice JOHN B. DOOLIN, having certified his disqualification in this case, the Honorable C. F. BLISS, Jr., was appointed Special Justice in his stead.