# ARKANSAS ELECTRIC COOPERATIVE CORPORATION *v.* ARKANSAS PUBLIC SERVICE COMMISSION

CA 92-862                                   856 S.W.2d 880

Court of Appeals of Arkansas
En Banc
Opinion delivered June 30, 1993

*Leland F. Leatherman, Robert M. Lyford,* and *Stephen P. Williams,* for appellant.

*The Rose Law Firm, A Professional Association,* by: *Charles W. Baker; Jeffrey L. Dangeau,* Arkansas Western Gas Co; and *Sandra L. Hockstetter,* Arkansas Louisiana Gas Co., for appellees gas companies.

*George C. Vena,* for appellee Arkansas Public Service Comm'n.

*Kirkland & Ellis,* by: *James D. Senger* and *Mitchell F. Hertz;* and *The Rose Law Firm, A Professional Association,* by: *Herbert C. Rule III* and *Stephen N. Joiner,* for appellees Arkansas Gas Consumers and Arkansas Electric Energy Consumers.

JOHN MAUZY PITTMAN, Judge. Arkansas Electric Cooperative Corporation (AECC), a wholesale power supplier to the sixteen member systems that own it, appeals from an order of the Arkansas Public Service Commission (Commission) establishing Rules and Regulations Governing Promotional Practices of Electric and Gas Public Utilities (the rules). We find no error and affirm.

Promotional practices are defined in the rules in part as "any consideration offered by a public utility to any person for the purpose, express or implied, of inducing such person to select or use the service or additional service or to conserve the use of service of such or any utility, or to select or install any appliance or equipment designed to use such or any utility service." Generally, promotional practices can be categorized as issues of conservation, load building, fuel substitution, and load management.

On November 26, 1990, the Commission opened a rulemaking docket to review the Commission rules and regulations governing the promotional practices of the utilities, which had been approved by the Commission on July 1, 1971, but which apparently had never been enforced. The Commission determined the rules "should be reviewed in light of the current technology and conditions existing within the electric and gas utility industry." All jurisdictional electric and gas utilities were made parties to the docket.

The Commission sought information from the utilities regarding their marketing and promotional practices and invited them to file comments and reply comments regarding modifications to the existing rules or other regulatory action that might be appropriate. Comments were filed by twenty-six utilities, the Office of the Attorney General (AG), the Arkansas Energy Office, Arkansas Electric Energy Consumers (AEEC), Arkansas Gas Consumers (AGC), the Arkansas Chapter of the Sierra Club, and the Staff of the Commission (Staff). These comments were entered into the record at a hearing on May 7 and 8, 1991, and the parties were allowed to make oral comments and ask clarifying questions as to the other parties' prefiled comments.

In Order No. 12, filed November 7, 1991, the Commission proposed revised rules in response to the comments filed by the parties. The parties again filed comments and reply comments. At a hearing on December 18, 1991, the Commission heard comments from private citizens and allowed the parties to make additional comments and ask questions of the other parties. Final promotional practices rules were attached to Order No. 13, filed on May 8, 1992.

AECC relies on four points for reversal: (1) the Commission acted without authority or jurisdiction in issuing the promotional practices rules; (2) Order No. 13 violates the requirements of Ark. Code Ann. § 23-2-421(a), which requires that the Commission's order be in sufficient detail to enable any court in which any action of the Commission is involved to determine the controverted question presented by the proceeding; (3) the Commission adopted standards to govern promotional practices without proper notice and hearing as required by Ark. Code Ann. § 23-2-305; and (4) the promotional practices rules do not meet the requirement of reasonableness contained in Ark. Code Ann. § 23-2-305.

Briefs in support of the Commission's ruling were filed by the Commission; AEEC and AGC jointly (collectively, the Consumers); and Arkansas Louisiana Gas Company (ALG), Arkansas Western Gas Company, and Arkansas Oklahoma Gas Corporation jointly (collectively, the Gas Companies.)

AECC argues first that the Commission does not have the jurisdiction or authority to promulgate rules regulating the

promotional practices of utilities. The other parties respond that the Commission generally has the duty to protect the public interest and specifically has ample statutory authority to promulgate the rules.

Based on our review of the Arkansas statutes pertaining to the regulation of public utilities, we find that the Commission possesses the authority to regulate the promotional practices of Arkansas electric and gas utilities. First, the Commission is allowed, after hearing and upon notice, to make or amend reasonable rules pertaining to the operation or service of public utilities. Ark. Code Ann. § 23-2-305 (1987). Other statutes also give the Commission the power to regulate the operations of and the service provided by public utilities. *See* Ark. Code Ann. § 23-2-301 (1987), which provides:

> The commission is vested with the power and jurisdiction, and it is made its duty, to supervise and regulate every public utility defined in § 23-1-101 and to do all things, whether specifically designated in this act, that may be necessary or expedient in the exercise of such power and jurisdiction, or in the discharge of its duty.

*See also* Ark. Code Ann. §§ 23-2-302 and 23-2-304 (1987).

The evidence before the Commission demonstrated that without regulation, customers throughout the state could see great disparities in services and promotional benefits. Such unreasonable advantages or prejudices are prohibited by Ark. Code Ann. § 23-3-114(a)(1) (1987), which provides: "As to rates or services, no public utility shall make or grant any unreasonable preference or advantage to any corporation or person or subject any corporation or person to any unreasonable prejudice or disadvantage."

We also find support for the rules in the Energy Conservation Endorsement Act of 1977, codified at Ark. Code Ann. §§ 23-3-401 — 23-3-405. Section 23-3-405 provides in part:

> (a)(1) The Arkansas Public Service Commission is authorized to propose, develop, solicit, approve, require, implement, and monitor measures by utility companies which cause the companies to incur costs of service and investments which conserve, as well as distribute, electri-

cal energy and existing supplies of natural gas, oil, and other fuels.

(2) After proper notice and hearings, the programs and measures may be approved and ordered into effect by the commission if it determines they will be beneficial to the ratepayers of such utilities and to the utilities themselves.

Included in the definition of energy conservation measures are "[p]rograms which result in the improvement of load factors, contribute to reductions in peak power demands, and promote efficient load management." Ark. Code Ann. § 23-3-403. Conservation is considered a proper utility function in § 23-3-404, as follows:

It shall be considered a proper and essential function of public utilities regulated by the Arkansas Public Service Commission to engage in energy conservation programs, projects, and practices which conserve, as well as distribute, electrical energy and supplies of natural gas, oil, and other fuels.

■ AECC argues that in adopting the promotional practices rules, the Commission has exceeded its authority and the legislature's intent in enacting the Energy Conservation Endorsement Act. We do not agree. Clearly, the legislature has given the Commission the responsibility of protecting the public interest in energy conservation and the authority to investigate and either approve or disapprove utility actions in the conservation or distribution of energy.

■ Statutes must be construed together and given their plain meanings. *Phillips* v. *City of Eureka Springs*, 312 Ark. 57, 847 S.W.2d 21 (1993). The plain meaning of the foregoing statutes is that the Commission possesses authority to regulate the promotional practices of the jurisdictional public utilities.

All the parties to this docket, including AECC, stated in their comments that they believe the public interest requires some regulation of utility promotional practices.[1] Don Smith, a former

---

[1] Written comments were filed numerous times in this docket and some witnesses

commissioner of the Federal Energy Regulatory Commission and the Arkansas Public Service Commission, in comments filed for the Gas Companies, stated:

> One of the fundamental tenets of utility regulation requires that customers within the same service class be treated in the same way. Discriminatory application of discounts favors new and high-use customers. These discounts are essentially funded by the utilities' existing and low use customers. Furthermore, the unregulated use of promotional practices by utilities also can cause severe pricing and service discrimination among customers: entire subdivisions can be denied access to one utility service directly as a result of the other utility's actions to prevent the extension of the competing utility's service into that area. To minimize the discriminatory effect of promotional practices, the Commission must ensure that they are offered in a nondiscriminatory manner even when there is no other utility directly competing for a particular market.

In its comments, ALG stated:

> A review of state commission regulations reveals that utility promotional practices or advertising by utilities are limited or regulated in 30 states, including Arkansas. Seventeen state regulatory commissions in addition to this one specifically regulate or prohibit certain types of utility promotional practices. . . . [I]t is a commonly-held regulatory opinion that utility promotional practices should not go un-checked, but should instead be subjected to clearly defined standards of permissible and non-permissible conduct.

AP&L stated in its comments: "[P]romotional practices are generally regulated to assure that they are consistent with the public interest. . . . The issue is not whether promotional practices should be regulated, but how they should be regulated."[2]

---

testified at both hearings. In this discussion, comments and reply comments are designated as "comments" and are simply identified by the sponsoring utility unless the author has been specifically identified.

[2] To indicate the extent of such practices, we note that AP&L estimated it spent approximately $608,000.00 in 1990 on promotional practices, as defined by the 1971

■ The public interest in energy conservation was recognized by the United States Supreme Court in *Central Hudson Gas & Electric Corp.* v. *Public Service Commission of New York*, 447 U.S. 557 (1980). In that case, the Supreme Court found that the Public Service Commission's complete ban of promotional advertising (advertising that promoted an increase in electric demand either on-peak or off-peak) by electric utilities violated the First Amendment rights of commercial speech.[3] The Court recognized that the state's interest in energy conservation is clearly substantial, 447 U.S. at 568, but found that no showing had been made that a more limited restriction on the content of promotional advertising would not serve adequately the state's interest. 447 U.S. at 570. The court also stated: "We accept without reservation the argument that conservation, as well as the development of alternative energy sources, is an imperative national goal. Administrative bodies empowered to regulate electric utilities have the authority — and indeed the duty — to take appropriate action to further this goal." 447 U.S. at 571. In a footnote, the Court suggested that the commission might consider a system of previewing advertising campaigns to insure that they will not defeat conservation policy. *Id.*

In its comments, AP&L noted the following:

> Clearly, a significant portion of the utility industry is actively pursuing programs to encourage efficient energy use, to move load off-peak, and to conserve energy. While these programs are often offered under various headings, such as Conservation and Load Management or Demand-Side Management, generally they include programs similar to those being considered in this proceeding.

AECC relies on the Oklahoma Supreme Court's ruling in *State* v. *Oklahoma Gas and Electric Co.*, 536 P.2d 887 (Okla.

---

rules. During 1990, AECC expended, according to AECC, $1,273,334.00 for incentive payments for the installation of energy efficient heat pumps and electric water heaters that meet specified efficiency requirements. AECC also spent $447,679.00 to advertise the incentive programs.

[3] In the case at bar, the proposed rules included a ban on promotional advertising; however, in response to the responsive comments, the ban was not included in the final rules. The final rules require only that "[a]ll advertising associated with a promotional practice shall be truthful and not misleading or deceptive."

1975), to support an argument that the Commission's "blanket prohibition" is beyond the authority or jurisdiction of the Commission and impermissibly infringes on the management function of the public utilities. In that case, the court addressed an order prohibiting all promotional practices and concluded that the prohibition was invalid because the practices were prohibited without regard to whether they were reasonably calculated to benefit all consumers of the utility's service. 536 P.2d at 896. The court stated: "We conclude promotional practices which are reasonably calculated to improve the utilities load factor and benefit all consumers by reducing the average unit cost of energy are not unjustly discriminatory, and prohibitions against such practices constitute an invasion of the discretion reserved to corporate management." *Id.*

In the case at bar, there is no blanket prohibition of promotional practices. Section 3 of the rules prohibits a public utility from engaging in promotional practices without first obtaining the approval of the Commission. Section 5 instructs the utilities on the procedure for filing proposed promotional practices and advises that the Commission will conduct an investigation of any proposed promotional practice and make a determination of whether it is in the public interest. Clearly, the rules are not a "blanket prohibition" and specifically provide for the type of public interest determination that the Oklahoma court approved.

The regulation of utilities is one of the most important of the functions traditionally associated with the police power of the states. *Arkansas Elec. Coop.* v. *Arkansas Pub. Serv. Comm'n*, 461 U.S. 375, 377 (1983). As demonstrated by the statutes discussed above, the Arkansas General Assembly has delegated broad regulatory and supervisory powers to the Commission. Under this comprehensive regulatory scheme, the public utility is granted monopoly status. As a *quid pro quo* for its monopoly status, a public service utility is subject to vigilant and continuous regulation. *Arizona Pub. Serv. Co.* v. *Arizona Corp. Comm'n*, 155 Ariz. 263, 746 P.2d 4 (Ct. App. 1987), *rev'd in part on other grounds*, 760 P.2d 532 (1988). The regulation of promotional practices is not an unreasonable interference with management discretion. Far from seeking to expand its traditional regulatory authority or to unlawfully usurp AECC's management prerogative, the Commission is signaling its intent

to carefully scrutinize the utilities' promotional practices and to exercise its authority to achieve lawful regulatory goals. Such action is clearly within the full regulatory authority of the Commission.

■■ AECC next contends that the Commission erred in finding that the proposed promotional practices must benefit ratepayers in the aggregate and erred in requiring prior approval of any promotional practice. We conclude that the Commission was justified in establishing these requirements. In its comments, the AG addressed these issues as follows:

> [T]he requirement that the proposed promotional practice must benefit ratepayers in the aggregate, rather than just the ratepayers of the proposing utility, allows the Commission to fulfill its obligation to protect the overall public interest rather than just one segment of the public. The Commission cannot look merely to the interests of the customers of one company; the ratepayers of competing utilities are equally entitled to this Commission's consideration and protection. A failure to examine a practice's impact on other utility's ratepayers exposes those ratepayers to the potential of unreasonable discrimination, i.e. their costs may increase as a result of a promotional practice from which they receive no benefit.

> . . . Proper application of these standards should ensure that abusive business practices such as those described at hearing by public witnesses . . . do not recur. It is simply not a "just and reasonable" business practice to mislead customers as to the potential effect of a new appliance on their energy bills or to install an "efficient" appliance in a house for which it is not suited. Further, the requirement that the promotional practice be approved by the Commission before it is implemented will allow the Commission to assure itself and the public that the proposed practice is designed to prevent such abusive activities.

AECC also contends that the Commission lacked the authority to regulate competition among the utilities. It argues that the language contained in § 23-3-114(a)(1) (*i.e.*, "no public utility shall make or grant any unreasonable preference or

advantage to any corporation or person or subject any corporation or person to any unreasonable prejudice or disadvantage") simply requires that a public utility treat *its* customers fairly with regard to rates and services and does not give the Commission jurisdiction over competitive practices among competing utilities. In response, the Commission contends that it has not sought to broadly regulate competition between utilities in all guises and manners but to consider those factors relating to conservation and unreasonable prejudice. The Commission further argues that the words "any person in § 23-3-114 mean precisely what they state and do not mean "its ratepayers" as AECC argues.

Furthermore, testimony at the hearings supports the proposition that regulation of promotional practices may promote healthy competition among the utilities. Mike Bohrofen, manager of marketing for Oklahoma Gas and Electric Company, stated that "we feel programs that are regulated, cost based, fair and reviewed by this Commission can create competition." The AG commented that "regulation of promotional practices is necessary both to prohibit unreasonable discriminatory practices and to promote fair and vigorous competition." It went on to explain:

> Because the promotional practices of one utility may affect the customers of another, the Commission should scrutinize all proposed promotional programs to guard against predatory pricing and other mechanisms that may result in undue discrimination. Predatory pricing occurs when a company prices a good or service lower than the cost of that good or service, with the intention of driving a competitor out of business or gaining a portion of a competitor's market share. A particularly egregious example of predatory pricing is a program offering free electric water heaters to replace existing gas water heaters. . . . To the extent that such a program successfully induces load-switching from gas to electric service, remaining gas customers are disadvantaged by the resulting need to spread the gas utility's fixed costs over a smaller customer base.

Other courts that have considered the necessity of regulation of promotional practices have found that there are means other than

promotional practices to promote sound competition among utilities — efficiency of management, technological improvements, superiority of service, and economy of costs. *See East Ohio Gas Co.* v. *Public Util. Comm'n of Ohio*, 437 N.E.2d 594, 595 (Ohio 1982), and *Application of Hawaiian Elec. Co.*, 535 P.2d 1102, 1108 (Hawaii 1975).

■ AECC also argues that under the Arkansas Supreme Court's decision in *Associated Mechanical Contractors of Arkansas* v. *Arkansas Louisiana Gas Co.*, 225 Ark. 424, 283 S.W.2d 123 (1955), the merchandising of appliances and equipment does not constitute public utility business and is not subject to regulation by the Commission. In that case, the court found that the Commission did not have the authority to regulate the non-public utility business of a corporation. 225 Ark. at 427-28, 283 S.W.2d at 126. Here, however, the Commission is not attempting to regulate any non-public activities of the utilities. In Section 2(g)(2) of the rules, the Commission exempts from regulation the merchandising or financing of appliances or equipment if such activity is operated as a non-utility business that is completely segregated from the utility's public utility activities.

AECC's second point for reversal is that Order No. 13 violates the requirements of Ark. Code Ann. § 23-2-421(a), which provides in pertinent part that "[t]he Arkansas Public Service Commission's decision shall be in sufficient detail to enable any court in which any action of the commission is involved to determine the controverted question presented by the proceeding." AECC argues that "Order No. 13 is defective because the Commission failed to set forth in Order No. 13, in sufficient detail, the objections presented at the hearing of December 18, 1991, in opposition to the adoption of the Rules, and the evidence the Commission found substantial enough to controvert these objections."

■ AECC refers this court to the supreme court's ruling in *Arkansas Public Service Commission* v. *Continental Telephone Co. of Arkansas*, 262 Ark. 821, 561 S.W.2d 645 (1978), in support of its argument. In that case, the court remanded the case to the Commission for specific findings of fact to show how the Commission arrived at its decision denying the utility a rate

increase. The court stated: "[T]he Commission's findings must be in sufficient detail to enable the courts to make an adequate and meaningful review. Courts cannot perform the reviewing function assigned to them in the absence of adequate and complete findings by the commission on all essential elements pertinent to determination of a fair return." 262 Ark. at 829, 561 S.W.2d at 649.

The Commission's findings in Order No. 13 in the case at bar are as follows:

> The parties to this proceeding have developed a very thorough and extensive record. Based upon that record the Commission has endeavored, via the attached final promotional practices rules, to address the concerns expressed by the parties to this proceeding as well as the general public, while attempting to fairly balance the interest of the gas utilities, the electric utilities and the ratepayers they serve. The Commission believes that the final promotional practices rules attached hereto represent a fair and reasonable balance of those interests and are, therefore, in the overall public interest.

Moreover, it is appropriate for the court to consider the public policy section of the rules attached to Order No. 13, as well as the rules themselves, in reviewing the sufficiency of this order. "It is sufficient to satisfy the requirement of findings of fact that the order or determination incorporates by reference a report which contains all of the essential findings of fact. . . ." 73A C.J.S. *Public Administrative Law and Procedure* § 144 (1983).

In the public policy section of the rules, the Commission discussed why the Commission believes the rules are in the public interest and are based on its statutory authority:

> In light of events which have occurred subsequent to the issuance of the 1971 Rules and Regulations Governing Promotional Practices of Electric and Gas Public Utilities (1971 Rules), competition among electric and gas utilities must now exist in an era of energy conservation and integrated resource planning. As these utilities seek to maximize the use of existing generating plants and reserves, to use wisely the natural resources that provide their fuel,

and, thus, to encourage their customers to conserve energy where possible, the Commission has determined that promotional practices must benefit ratepayers in the aggregate or not be engaged in at all.

The promotion of goods or services offered the public is an inherent and important part of the economy of the State and Nation. However, any electric and gas utilities desiring to engage in promotional practices have the burden of proving that the proposed practices are not unduly discriminatory or anticompetitive, and are in the public interest because they serve the purposes of energy conservation pursuant to the authority granted the Commission in the Energy Conservation Endorsement Act of 1977, Ark. Code Ann. § 23-3-401 et seq. The laws of this State require the rates of a public utility to be just and reasonable and in conformity with the rules, regulations and orders of the Commission. The laws prohibit a public utility from, directly or indirectly, demanding or receiving from anyone a greater or lesser rate for service than that specified in its tariff. The laws prohibit, with respect to rates and services, the granting of unreasonable preferences or advantages to anyone, or subjecting anyone to unreasonable prejudice or disadvantage. The laws grant the Commission the authority to encourage energy conservation. Accordingly, the Commission declares that the adoption and enforcement of these revised Rules and Regulations are in the public interest because they seek to advance the welfare of all consumers by prohibiting all promotional practices unless approval by the Commission has been granted after investigation and hearing.

It is also important to note that the instant case involves rulemaking[4] and these rules can be distinguished from the usual order issued by an agency.[5]

---

[4] " 'Rulemaking' or legislation on the administrative level, is the function of laying down general regulations relating to classes of persons and situations as distinguished from orders that apply to named persons or to specific situations, the latter being adjudicatory in nature." 1 Am. Jur. 2d *Administrative Law* § 164 (1962).

[5] The rules and regulations of a public administrative agency have been distinguished from the orders or determinations of such an agency in that the latter are actions

[E]xcept where otherwise required by statute, it is only where an administrative matter is of an inherently judicial or quasi-judicial nature, or where an agency or officer is acting in a quasi-judicial capacity that findings of fact are necessary. So, findings are not necessary where the agency proceeding is not essentially adjudicatory, or where a legislative function is being performed by an agency, except where the legislature requires such findings to be made.

73A C.J.S. *Public Administrative Law and Procedure* § 143 (1983).

While we do not determine that findings of fact are not required when the Commission is acting in its legislative capacity, it is appropriate for this court to assess the sufficiency of the findings with the non-adversarial nature and information gathering procedure of the rulemaking process in mind. Here, the Commission clearly stated why the regulation of promotional practices is required by Arkansas statutes and the Commission's duty to protect the public interest. The Commission discussed specific statutes and the specific requirements of those statutes. In addition, the Commission explained its finding that the rules will assure compliance with these statutes in this "era of energy conservation and integrated resource planning." The Commission was not required to recite the comments of the parties in its fact findings, especially in light of the fact that all parties agreed in documents and comments presented to the Commission that the public interest requires the regulation of promotional practices. The basis for the Commission's decision in this regard is clear.

For its third point for reversal, AECC contends that the Commission adopted standards to govern promotional practices without proper notice and hearing as required by Ark. Code Ann. § 23-2-305 (1987), which states:

The commission is empowered, after hearing and

---

in which there is more of the judicial function and which deal with a particular present situation, or which apply to named persons, while the former are actions in which the legislative element predominates. 73 C.J.S. *Public Administrative Law and Procedure, Rules and Regulations* § 87 (1983).

upon notice, to make and, from time to time, in like manner, to alter or amend such reasonable rules pertaining to the operation, accounting, service, and rates of public utilities and of the practice and procedure governing all investigations by and hearings and proceedings before the commission as it may deem proper and not inconsistent with this act.

AECC argues that by not including references to the Participant Test, the Ratepayer Impact Measure Test, the Utility Cost Test, and the California Manual in Order No. 12, filed November 7, 1991, the Commission failed to provide to the parties and the public the notice required by § 23-2-305 and the Commission Rules of Practice and Procedure, Rule 12.03. We disagree.

In comments filed on March 6, 1991, Don Smith, testifying for the Gas Companies, recommended four tests to be used in evaluating promotional practices:

1. Total-Resource Cost Test — analyzes most demand-side management programs. The test focuses on the total costs of the program, including both the participants' and the utility's costs.

2. Participant Test — measures the quantifiable benefits and costs to the customer participating in a promotional program.

3. Ratepayer Impact Measure Test — analyzes what happens to ratepayers' bills due to changes in utility revenues and operating costs resulting from a program.

4. Utility Cost Test — measures the net costs of a program as a resource option based on narrowly defined costs incurred by a utility, but excluding net costs incurred by a program participant.

ALG also filed comments on that date in which the four tests were described and recommended for use by the Commission to evaluate the practices. Each party had a representative at the hearing on May 7 and 8, 1991, and the other parties were given an opportunity to ask questions about the comments.

Attached to Order No. 12 were proposed rules, which provided that the Total Resource Cost Test would be the criterion

for determining whether a promotional practice is in the public interest. Comments were filed again prior to the second hearing on December 18, 1991. On December 3, 1991, Staff filed comments recommending that the Commission use all of the four tests that had been recommended. In their reply comments, AP&L noted that there was general agreement among the parties, as evidenced by their comments, that the Total Resource Cost Test should not be the sole criterion.

In the rules issued with Order No. 13, Section 4 stated in pertinent part that:

> The following standards shall govern the utility's promotional practices:
>
> (a) A promotional practice must be in the public interest. In determining whether a practice is in the public interest, the Commission shall consider the following:
>
> > (1) Cost efficiency of the proposed promotional practice using the Total Resource Cost Test, Participant Test, and Utility Cost Test; and
> >
> > (2) Ratepayer impact of the proposed promotional practices using the Ratepayer Impact Measure Test.

The Commission provided a summary of the tests in an appendix to the rules and identified them as coming from the Standard Practice Manual. The Commission noted that the manual "offers guidelines to be used to allow the appropriate match of specific promotional practices with the various tests." The Commission also stated that a copy of the California Manual would be provided by the Secretary of the Commission upon request. In response to a petition filed by AP&L, one subsection of a rule was revised to clarify the application of the tests and was set out in Order No. 14.

The requirement of notice in a rulemaking is discussed in 73 C.J.S. *Public Administrative Law and Procedure*, § 105 (1983) as follows:

> Notice is sufficient if it affords interested parties a reasonable opportunity to participate in the rule-making

process by providing a description of the subjects and issues involved. Accordingly, precise notice of each aspect of the regulations eventually adopted is not required to be given. Modification of a proposed rule does not render the notice defective where adequate notice of the general subject of the rule making was known and it ought to have been anticipated that the rule might be modified in the light of developments during the rule-making process.

AECC had numerous opportunities to question, comment on, or object to the tests proposed by the various parties to the docket. The Commission responded affirmatively to the recommendation that the four tests be adopted, and we are not aware of any requirement of new notice whenever an agency responsibly adopts the suggestions of interested parties. All information and recommendations were made available to the parties and the public well in advance of the issuance of the final rules on May 8, 1992. Thus, both the requirements and the spirit of Ark. Code Ann. § 23-2-305 were complied with.

AECC's final point for reversal is that the rules do not meet the requirement of reasonableness, as found in Ark. Code Ann. § 23-2-305 (1987). That statute is set out in the discussion of the third point for reversal and empowers the Commission to make and amend reasonable rules pertaining to the operation and service of public utilities. In this argument, AECC does not challenge the need for the rules but simply states that the rules result in excessive bureaucratic overburdening and redundant requirements of unnecessary and costly filings, are so unreasonable as to eliminate many energy conservation programs, will cause unnecessary delays in the implementaion of programs, and will require the utilities to expand their staffs.

In *Southwestern Bell Telephone Co.* v. *Arkansas Public Service Commission*, 18 Ark. App. 260, 715 S.W.2d 451 (1986), this court stated:

> [J]udicial review is not a mere formality, and it is our task to determine whether there has been an arbitrary or unwarranted abuse of the Commission's discretion, although considerable judicial restraint should be observed in finding such an abuse. It is not for this court to advise the Commission how to discharge its functions in arriving at

findings of fact or in exercising its discretion. The question of reasonableness of the actions of the Commission relates only to its findings of fact and to a determination of whether its actions were arbitrary.

18 Ark. App. at 265, 715 S.W.2d at 453.

All parties to this docket, however, stated that the public interest requires some regulation of utility promotional practices. The voluminous record in this case is replete with testimony supporting the need for regulation of utility promotional practices. The final rules are based on the Commission's proposed rules and have been modified, improved, and clarified in response to the many comments received. For instance, the final rules incorporated changes regarding the advertising of promotional practices, the regulation of non-utility business, the standard for determining the public interest of the practices, the burden of proof in hearings on promotional practices, and added a section providing for a period of transition from the 1971 rules to the newly-adopted rules. The Commission obviously reviewed the extensive record in this case, and the evaluation of the testimony was for the Commission, not the courts. *Southwestern Bell Telephone Co. v. Arkansas Pub. Serv. Comm'n*, 267 Ark. 550, 568, 593 S.W.2d 434, 445-46 (1980).

AECC argues, without explanation, that the rules will eliminate energy conservation programs. The comments presented by the parties and the Commission's findings in the public policy section of the rules, however, support the contention that the rules will further the cause of energy conservation. Although AECC argues that the rules will cause unnecessary delays in the implementation of promotional practices, Section 6 of the rules provides for implementation of the rules within thirty days of the filing unless the Commission issues an order suspending the proposed rules pending further investigation. This section also limits the time of suspension. AECC provides no support for its contention that the rules will require utilities to expand their staffs.

In sum, we find no arbitrary action or manifest abuse of the Commission's discretion, and the rules are not invalid simply because they may work a hardship or create inconveniences.

Affirmed.

COOPER, J., not participating.