Wayne R. **HOLMQUIST, et al.**

v.

**NEW ENGLAND TELEPHONE
& TELEGRAPH CO.**

Supreme Judicial Court of Maine.

Argued Jan. 4, 1994.

Decided Feb. 15, 1994.

Joel C. Martin (orally), Petrucelli & Martin, Portland, for plaintiffs.

William C. Black (orally) Public Advocate, Eric J. Bryant, Glen S. Goodnough (orally), Public Utilities Com'n, Augusta, Bartlett L. Thomas (orally), New England Telephone, Boston, MA, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

WATHEN, Chief Justice.

Plaintiffs Pine Tree Telephone Company ("Pine Tree") and several of its customers appeal from a decision of the Public Utilities Commission finding that they failed to establish discrimination on the part of New England Telephone & Telegraph Company ("NET"). Plaintiffs argue that the evidence compelled a finding against NET and that the PUC wrongfully denied a remedy. Finding no error, we affirm.

■ Pine Tree and a number of its customers filed a complaint with the PUC alleging that their small local calling area and the high toll rates charged by NET discriminate against and injure them.[1] Hearings revealed the following: Pine Tree's local service area includes Gray, West Gray and New Gloucester. Historically, these towns have had a much smaller local calling area than nearby towns served by NET. Pine Tree, however, fixes the size of its local calling area and charges only about one-half as much as NET for local service.

Timothy Hutchinson, Pine Tree's president, testified that independent telephone companies ("ITCs") such as Pine Tree receive from NET a contractual payment for handling toll calls based in part on the ITCs' costs of providing service. NET retains whatever is left after payments to ITCs, and its costs of providing long-distance service are not considered. Hutchinson testified to his belief that NET sets toll rates well above cost in order to price its local service below cost—toll revenues subsidize large local calling areas for NET customers. Because

---

**1.** The PUC initially dismissed the complaint, but we vacated the dismissal. *Agro v. Public Utilities* *Comm'n,* 611 A.2d 566, 570 (Me.1992).

ITCs do not share in this subsidy, according to Hutchinson, NET discriminates against them and their customers. Hutchinson could not quantify the alleged subsidy, stating that he had performed no cost studies and that he did not know NET's costs for toll or local service. Instead, he testified first that Pine Tree uses toll revenues to price local calling below cost, so NET must do the same, and second that if NET's toll prices were set based on marginal costs alone, its local rates should be much higher.[2] He testified that even if Pine Tree raised its local rates to match NET's it would not be able to match NET's local calling area.

Marvin Hanson, Director-Maine Regulatory for NET, testified that NET's toll and local services are priced above marginal cost. Hanson testified that toll revenues do not subsidize NET's local calling areas. Whether toll service is more profitable than local service or vice-versa depends on the allocation of common and fixed costs between the two. There is no standard allocation; even Hutchinson admitted that the allocation chosen is purely arbitrary and may be based on social policies. Hanson stated that a portion of NET's payments to ITCs for toll service is used by ITCs to defray their common and fixed costs.

The PUC dismissed the complaint, finding that plaintiffs had not met their burden of proving that NET discriminated against them. Plaintiffs now challenge the PUC's decision and are required to demonstrate that the evidence compels a contrary result.

▮ Plaintiffs seek to establish discrimination by arguing that the PUC's decision in *Lewiston, Greene & Monmouth Tel. Co. v. New England Tel. & Tel. Co.*, No. F.C. 1902 (M.P.U.C.1972), forbids any differences between telephone services provided to similarly-situated customers. They misinterpret that decision. There the PUC held that "customers substantially similarly situated should receive comparable and substantially similar treatment in measuring the degree of the relative burden the various classes of customers might reasonably be expected to assume by the way of paying rates and charges for ... services." *Id.* at 24. This decision does not require that there be no differences between services. Rather, when "comparable services" are provided, customers should pay "comparable rates and charges" for those services. *Id.* at 23. This is simply one facet of the statutory requirement that there be no "unjust discrimination" by a utility. *See* 35-A M.R.S.A. § 702(1) (1988). Mere differences are not unjust discrimination. *Gifford v. Central Maine Power Co.*, 217 A.2d 200, 202 (Me.1966). Only differences which cannot be justified on a legitimate basis are illegal. *See Central Maine Power Co. v. Public Utilities Comm'n*, 405 A.2d 153, 177-78 (Me.1979).

Plaintiffs argue that the failure of NET to equitably distribute its excess earnings on toll calls demonstrates unjust discrimination. There is scant evidence, however, of excess earnings. NET showed that its revenues exceed marginal costs for both toll and local service. Plaintiffs could have calculated any excess earnings on toll service by performing a cost study using NET data and their own allocation of common and fixed costs, but failed to do so. Their sole factual evidence of excess earnings was calculated using the highest revenue rate (the undiscounted daytime rate) compared to NET's marginal costs. Even plaintiffs admitted, however, that marginal costs should not be used for pricing. Plaintiffs also argue that the different size of the local calling areas demonstrates discrimination. Pine Tree, however, not NET, fixes the size of its local calling area, and Pine Tree's customers pay significantly less than NET's customers for local service. On this record, the PUC was not compelled to find unjust discrimination by NET.

▮ Plaintiffs also argue that the PUC's order of dismissal violates the order in *Agro v. Public Utilities Comm'n*, 611 A.2d 566 (Me.1992), our previous encounter with this case. *Agro*, however, requires only that the PUC "promptly and seriously consider con-

---

**2.** Hutchinson admitted, however, that marginal costs are not real costs and should not be used to set prices.

sumer complaints." *Id.* at 569. Examination of the record indicates that the PUC has done just that.

Plaintiffs' remaining arguments are without merit.

The entry is:

Decision of the Public Utilities Commission affirmed.

All concurring.